ORIGINAL

1

**KESSLER TOPAZ**
2      **MELTZER & CHECK, LLP**
Ramzi Abadou (222567)
3     Erik D. Peterson (257098)
One Sansome Street, Suite 1850
4     San Francisco, CA  94104
Phone: (415) 400-3000
5     Fax: (415) 400-3001
rabadou@ktmc.com
6     epeterson@ktmc.com

7     -and-

8     Eric L. Zagar (250519)
James H. Miller
9     Matthew A. Goldstein
280 King of Prussia Road
10    Radnor, PA 19087
Phone: (610) 667-7706
11    Fax: (267) 948-2512
ezagar@ktmc.com
12    jmiller@ktmc.com
mgoldstein@ktmc.com

13    *Attorneys for Plaintiff*

14                **UNITED STATES DISTRICT COURT**

15               **NORTHERN DISTRICT OF CALIFORNIA**

16    ST. LOUIS POLICE RETIREMENT SYSTEM,    Case No. 12    5036
On Behalf of Itself and All Others Similarly
17    Situated and Derivatively on Behalf of Nominal    **CLASS ACTION**    YGR
Defendant ABAXIS, INC.,
18
Plaintiff,
19                                                  **VERIFIED SHAREHOLDER CLASS**
**ACTION AND DERIVATIVE**
20         v.                                       **COMPLAINT**

21    CLINTON H. SEVERSON, ALBERTO R.
SANTA INES, KENNETH P. ARON,
22    VLADIMIR E. OSTOICH, DONALD P.
WOOD, MARTIN V. MULROY, RICHARD J.    **JURY TRIAL DEMANDED**
23    BASTIANI, MICHAEL D. CASEY, HENK J.
EVENHUIS, PRITHIPAL SINGH, VERNON
24    E. ALTMAN, and ERNEST S. TUCKER,

25                       Defendants,

26         and

27    ABAXIS, INC.

28                  Nominal Defendant.

Plaintiff St. Louis Police Retirement System ("Plaintiff"), by the undersigned attorneys, submits this Verified Shareholder Class Action and Derivative Complaint (the "Complaint") against the defendants named herein, and alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, a review of public filings, press releases and reports, and an investigation undertaken by Plaintiff's counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a shareholder action brought by Plaintiff individually, on behalf of itself and other similarly situated stockholders, and derivatively on behalf of nominal defendant Abaxis, Inc. ("Abaxis" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2. In gross breach of their fiduciary duties as directors of the Company, the Grantor Defendants (as defined herein) have wrongfully caused and allowed the Company to issue excessive and improper shares of Company common stock in settlement of restricted stock units (the "Restricted Stock Units") granted to company employees, including the Officer Defendants (as defined herein), in violation of the Company's 2005 Equity Incentive Plan (the "2005 Plan") and at the expense of the Company and its shareholders.

3. The 2005 Plan, originally approved by shareholders in October 2005 and subsequently amended by the Company and approved by shareholders in October 2008 and again in October 2010, allows the Company to grant awards of Restricted Stock Units and other equity-based awards. The 2005 Plan contains a provision that no more than 500,000 shares of Company common stock may be issued under the 2005 Plan upon exercise or settlement of "full value awards," which includes Restricted Stock Units (the "Restricted Stock Limit").

4. Beginning in fiscal year ("FY") 2007, upon the recommendation of the Compensation Committee, the Board granted Restricted Stock Units to certain Company officers,

including the Officer Defendants.  Specifically, for FY 2007, 2008 and 2009, the Board granted officers a total of 170,000, 130,000 and 130,000 Restricted Stock Units, respectively.

5.     Despite the fact that Board had already granted 430,000 Restricted Stock Units to certain officers, and upon settlement of those awards would be closing in on the Restricted Stock Limit, the Board, with the specific approval of the Compensation Committee, violated the 2005 Plan by granting and subsequently issuing shares in settlement of additional Restricted Stock Units far in excess of the Restricted Stock Limit.  For FY 2010, 2011, 2012 and 2013, the Board granted certain Officer Defendants 155,000, 155,000, 155,000 and 65,000 Restricted Stock Units, respectively.  In total, the Board granted to the Officer Defendants **960,000** Restricted Stock Units, *i.e.*, **nearly double** the number that could be settled in accordance with the Restricted Stock Limit.  The total number of shares issued in excess of the Restricted Stock Limit is much higher, as the Board also granted Restricted Stock Units, and subsequently issued shares in settlement thereof, to numerous employees other than the Officer Defendants.  Indeed, since FY 2007, the Board has granted a total of **2,045,000** Restricted Stock Units, *i.e.*, more than **four times** the number that could be settled in accordance with the Restricted Stock Limit.  As of August 31, 2012, awards consisting of Restricted Stock Units covering an aggregate of 1,119,000 shares of common stock were outstanding under the 2005 Plan.

6.     In a Form 8-K filed with the Securities and Exchange Commission ("SEC") on August 28, 2012 (the "August 28, 2012 8-K"), the Company stated that it received a letter from the staff of the Listing Qualifications Office of the NASDAQ Stock Market ("NASDAQ") informing the Company that it had failed to comply with Listing Rule 5635(c), which requires listed companies to obtain stockholder approval for material amendments to an equity compensation plan.  Specifically, the Company admitted that it "exceeded the full value award limit" because it purportedly believed that "such limit applied to each 500,000-share increase to the overall share reserve increase approved by stockholders in 2005, 2008 and 2010."  According to the August 28, 2012 8-K, as of August 28, 2012, the Company had issued 870,179 shares of Common Stock upon settlement of Restricted Stock Units granted under the 2005 Plan since

1   October 2005, some *370,179 units in excess of the Restricted Stock Limit*.  A true and correct

2   copy of the August 28, 2012 8-K is attached hereto as Exhibit A.

3        7.    As alleged in detailed herein, in gross breach of their fiduciary duties as directors

4   of Abaxis, the Grantor Defendants improperly and unlawfully granted, and subsequently issued

5   shares of Abaxis common stock in settlement of, Restricted Stock Units in excess of the Restricted

6   Stock Limit provided for in the 2005 Plan.  Irrespective of defendants' purported belief that the

7   Restricted Stock Limit had somehow been increased, which is hard to believe in light of the fact

8   that the defendants who received the Restricted Stock Units and approved such awards were the

9   same individuals who developed and administered the 2005 Plan, Abaxis has sustained millions of

10  dollars in damages, and the Officer Defendants and other employees have garnered millions of

11  dollars in unlawful proceeds as a result of *ultra vires* grants of hundreds of thousands of Restricted

12  Stock Units.

13       8.    On September 17, 2012, the Company filed with the SEC a Form DEF14A (the

14  "2012 Proxy") setting the Company's annual meeting for October 24, 2012 (the "Annual

15  Meeting") and soliciting stockholder votes at the Annual Meeting.  The 2012 Proxy omits

16  information material to Plaintiff's and other shareholders' informed decision regarding proposed

17  amendments to the 2005 Plan, *e.g.*, an amendment to eliminate the Restricted Stock Limit (the

18  "Restricted Stock Limit Amendment").  A true and correct copy of the 2012 Proxy is attached

19  hereto as Exhibit B.

20       9.    The 2012 Proxy is materially false and misleading in several respects, leaving

21  shareholders either uninformed or misinformed as to, among other things: (1) the bases for the

22  Compensation Committee's decision to eliminate the Restricted Stock Limit—*e.g.*, that the

23  Grantor Defendants had already violated the 2005 Plan by dramatically exceeding the Restricted

24  Stock Limit; (2) the Company's admission that it violated the 2005 Plan by exceeding the

25  Restricted Stock Limit; and (3) the number of Restricted Stock Units the Company has granted

26  beyond those that could be settled in accordance with the Restricted Stock Limit and the effect of

27  the Restricted Stock Limit Amendment on those excess Restricted Stock Units.

28

10.     Immediate action must be taken to enjoin the Annual Meeting, before shareholders are forced to vote on the Restricted Stock Limit Amendment based upon misleading and incomplete disclosures by the Board Defendants (as defined herein), as alleged in detail herein.

11.     Accordingly, through this action, Plaintiff seeks to recover for the Company the damages caused by the misconduct discussed herein; to compel the Officer Defendants to disgorge to the Company the improper amounts they received; to remedy the Grantor Defendants' breaches of fiduciary duties in connection therewith; and to obtain injunctive relief barring the Board and the Company from holding the Annual Meeting until the Board Defendants correct the materially false and misleading 2012 Proxy.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.   The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

13.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

14.     Plaintiff is a shareholder of Abaxis, was a shareholder of Abaxis at the time of the wrongdoing alleged herein, and has been a shareholder of Abaxis continuously since that time. Plaintiff is a citizen of the State of Missouri.

15.     Nominal Defendant Abaxis is a California corporation with its principal place of business located at 3240 Whipple Road, Union City, California 94587.  According to its public filings, Abaxis develops, manufactures, markets and sells portable blood analysis systems for use in the human or veterinary patient-care setting to provide clinicians with rapid blood constituent measurements.  In October 2011, Abaxis also began providing veterinary reference laboratory diagnostic and consulting services for veterinarians.

16.     Defendant Clinton H. Severson ("Severson") has served as the Company's President, Chief Executive Officer and a director since June 1996.  He was appointed Chairman of the Board in May 1998.  Upon information and belief, Severson is a citizen of the State of California.  Severson has received the following Restricted Stock Units pursuant to the 2005 Plan:

| Fiscal Year | Restricted Stock Units Received |
| --- | --- |
| 2007 | 90,000 |
| 2008 | 50,000 |
| 2009 | 50,000 |
| 2010 | 55,000 |
| 2011 | 55,000 |
| 2012 | 55,000 |
| 2013 | 23,000 |

17.     Defendant Alberto R. Santa Ines ("Santa Ines") has served as the Company's Chief Financial Officer and Vice President of Finance since April 2002.  Santa Ines joined the Company in February 2000 as Finance Manager.  In April 2001, Santa Ines was promoted to Interim Chief Financial Officer and Director of Finance, and in April 2002, he was promoted to his current position.  Upon information and belief, Santa Ines is a citizen of the State of California.  Santa Ines has received the following Restricted Stock Units pursuant to the 2005 Plan:

| Fiscal Year | Restricted Stock Units Received |
| --- | --- |
| 2007 | 20,000 |
| 2008 | 20,000 |
| 2009 | 20,000 |
| 2010 | 25,000 |
| 2011 | 25,000 |
| 2012 | 25,000 |
| 2013 | 10,500 |

18.     Defendant Kenneth P. Aron ("Aron") has served as the Company's Chief Technology Officer since April 2008.   Aron joined the Company in February 2000 as Vice President of Research and Development.   Upon information and belief, Aron is a citizen of the State of California.   Aron has received the following Restricted Stock Units pursuant to the 2005 Plan:

| Fiscal Year | Restricted Stock Units Received |
| --- | --- |
| 2007 | 20,000 |
| 2008 | 20,000 |
| 2009 | 20,000 |
| 2010 | 25,000 |
| 2011 | 25,000 |
| 2012 | 25,000 |
| 2013 | 10,500 |

19.     Defendant Vladimir E. Ostoich ("Ostoich") is one of the Company's co-founders and is currently the Vice President of Government Affairs and Vice President of Marketing for the Pacific Rim. Ostoich has served as Vice President in various capacities at the Company since its inception, including as Vice President of Research and Development, Senior Vice President of Research and Development, Vice President of Engineering and Instrument Manufacturing and Vice President of Marketing and Sales for the United States and Canada.   Upon information and belief, Ostoich is a citizen of the State of California.   Ostoich has received the following Restricted Stock Units pursuant to the 2005 Plan:

| Fiscal Year | Restricted Stock Units Received |
| --- | --- |
| 2007 | 20,000 |
| 2008 | 20,000 |
| 2009 | 20,000 |
| 2010 | 25,000 |
| 2011 | 25,000 |
| 2012 | 25,000 |
| 2013 | 10,500 |

20.     Defendant Donald P. Wood ("Wood") has served as the Company's Chief Operations Officer since April 2009.   Wood joined the Company in October 2007 as Vice

President of Operations.  Upon information and belief, Wood is a citizen of the State of California.
Wood has received the following Restricted Stock Units pursuant to the 2005 Plan:

| Fiscal Year | Restricted Stock Units Received |
|---|---|
| 2011 | 25,000 |
| 2012 | 25,000 |
| 2013 | 10,500 |

21.     Defendant Martin V. Mulroy ("Mulroy") has served as the Company's Chief
Commercial Officer for North America Animal Health since April 2012. Mulroy joined the
Company in November 1997 as the Northeast Regional Sales Manager.   He was promoted to
Eastern Area Director of Sales in December 1998, and in January 2005 he was promoted to
National Sales Director for the Domestic Veterinary market.  In May 2006, Mulroy was promoted
to Vice President of Animal Health Sales and Marketing for North America.   Upon information
and belief, Mulroy is a citizen of the State of California.   Mulroy has received the following
Restricted Stock Units pursuant to the 2005 Plan:

| Fiscal Year | Restricted Stock Units Received |
|---|---|
| 2010 | 25,000 |

22.     Defendants Severson, Santa Ines, Aron, Ostoich, Wood and Mulroy are
collectively referred to hereinafter as the "Officer Defendants."

23.     Defendant Richard J. Bastiani ("Bastiani") has served as a director of the Company
since September 1995.  Bastiani is a member of the Board's Audit Committee, Compensation
Committee and Nominating and Corporate Governance Committee.  Upon information and belief,
Bastiani is a citizen of the State of California.

24.     Defendant Michael D. Casey ("Casey") has served as a director of the Company
since October 2010.  Casey is a member of the Audit Committee, Compensation Committee and
Nominating and Corporate Governance Committee.   Upon information and belief, Casey is a
citizen of the State of California.

25.     Defendant Henk J. Evenhuis ("Evenhuis") has served as a director of the Company
since November 2002.  Evenhuis is a member of the Audit Committee and the Nominating and

Corporate Governance Committee and previously served as a member of the Compensation Committee. Upon information and belief, Evenhuis is a citizen of the State of California.

26. Defendant Prithipal Singh ("Singh") has served as a director of the Company since June 1992. Singh is a member of the Audit Committee, Compensation Committee and Nominating and Corporate Governance Committee. Upon information and belief, Singh is a citizen of the State of California.

27. Defendant Ernest S. Tucker ("Tucker") served as a director of the Company from September 1995 to October 2011. Tucker was a member of the Audit Committee, Compensation Committee and the Nominating and Corporate Governance Committee. Upon information and belief, Tucker is a citizen of the State of California.

28. Defendants Severson, Bastiani, Casey, Evenhuis, Singh, and Tucker are collectively referred to hereinafter as the "Grantor Defendants."

29. Defendant Vernon E. Altman ("Altman") has served as a director of the Company since April 2011. Altman is a member of the Audit Committee and the Nominating and Corporate Governance Committee. Upon information and belief, Altman is a citizen of the State of California.

30. Defendants Severson, Bastiani, Casey, Evenhuis, Singh, and Altman are collectively referred to hereinafter as the "Board Defendants."

31. The Officer Defendants, Grantor Defendants and Board Defendants are collectively referred to hereinafter as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

32. By reason of their positions as officers and/or directors of the Company and because of their ability to control the corporate affairs and business of the Company and its subsidiaries, the Individual Defendants owed the Company and its shareholders fiduciary obligations of good faith, trust, loyalty, due care, and candor, and were and are required to use their best efforts to control and manage the Company and its subsidiaries in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of

the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and its subsidiaries and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

33.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

34.     To discharge their duties, the Individual Defendants, as officers and/or directors of the Company, were required to exercise prudent and reasonable supervision over the management, policies, practices and controls of the Company and its subsidiaries.  By virtue of such duties, the Individual Defendants were required to, among other things:

    a.     exercise good faith in ensuring that the affairs of the Company and its subsidiaries were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

    b.     exercise good faith in ensuring that the Company and its subsidiaries were operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements and the Company's governing documents, *e.g.*, the 2005 Plan, as amended, including acting only within the scope of their legal authority; and

    c.     make full, fair, and accurate disclosures to shareholders, including when seeking shareholder approval for Board actions.

35.     Grantor Defendants Bastiani, Casey, Singh, Evenhuis and Tucker, as members of the Compensation Committee, were responsible for properly administering the 2005 Plan and were required to comply with the obligations set forth in the Compensation Committee Charter (the "Compensation Committee Charter").  According to the Compensation Committee Charter, the purpose of the Compensation Committee is to, *inter alia*: (i) discharge the Board's responsibilities relating to compensation of the Company's executive officers and directors; (ii) review all components of executive officer and director compensation for consistency with the Committee's compensation philosophy; and (iii) review and discuss with management the

Company's disclosures for use in any of the Company's annual reports on Form 10-K, registration statements, proxy statements or information statements and for producing an annual report on executive compensation for inclusion in the Company's proxy statement.

36.     According to the Compensation Committee Charter, the Compensation Committee members have the following authority and responsibilities:

(1)     Recommend to the Board for determination on all compensation for the Chief Executive Officer, including incentive-based and equity-based compensation. The Chief Executive Officer may not be present during such voting or deliberations.

(2)     Review and recommend to the Board for determination and approval annual performance objectives and goals relevant to compensation for the Chief Executive Officer and evaluate the performance of the Chief Executive Officer in light of these goals and objectives.

(3)     Consider, in determining the long-term incentive component of compensation for the Chief Executive Officer, the Company's performance and relative shareholder return, the value of similar incentive awards to chief executive officers at comparable companies, and the awards given to the Company's Chief Executive Officer in past years.

(4)     Develop or review and recommend to the Board for determination and approval the incentive-based or equity-based compensation plans in which the Company's executive officers and employees participate, and review and recommend to the Board for determination and approval performance objectives and goals, salaries, and incentive and equity awards for other executive officers.

(5)     Approve all employment, severance, or change-in-control agreements, special or supplemental benefits, or provisions including the same, applicable to executive officers.

(6)     Review and advise the Board concerning both regional and industry-wide compensation practices and trends in order to assess the adequacy and competitiveness of the Company's compensation programs for the CEO, other executive officers and directors relative to comparable companies in the Company's industry and geography.

(7)     Review and propose to the Board from time to time changes in director compensation.

(8)     The Committee shall review and discuss with management the Company's disclosures contained under the caption "Compensation Discussion and Analysis" for use in any of the Company's annual reports on Form 10-K, registration statements, proxy statements or information statements and make recommendations to the Board that the CD&A be approved for inclusion in the Company's annual

reports on Form 10-K, registration statements, proxy statements or information statements.

(9)  Prepare an annual report on executive compensation for inclusion in the Company's proxy statement for the annual meeting of stockholders, in accordance with applicable rules and regulations.

(10)  Perform such other activities consistent with this Charter, the Company's Bylaws and governing law, as the Committee or the Board deems necessary or appropriate.

(11)  Make regular reports to the Board of Directors regarding the foregoing.

(12)  Review and reassess the adequacy of this Charter as appropriate and recommend any proposed changes to the Board for approval.

## SUBSTANTIVE ALLEGATIONS

### 2005 Equity Incentive Plan

37.     According to the Company's SEC filings, the 2005 Plan restated and amended the Company's 1998 Stock Option Plan (the "1998 Plan").  The 2005 Plan allows the Company to award "stock options, stock appreciation rights, restricted stock awards, *restricted stock units*, performance cash awards, performance shares, performance units, deferred compensation awards or other share-based awards" to employees, directors and consultants.  (Emphasis added).  Prior to FY 2007, however, equity-based grants to the Company's executive officers were comprised solely of stock options.

38.     According to the 2005 Plan, its purpose is to:

advance the interests of the Participating Company Group and its shareholders by providing an incentive to attract and retain the best qualified personnel to perform services for the Participating Company Group, by motivating such persons to contribute to the growth and profitability of the Participating Company Group, by aligning their interests with interests of the Company's shareholders, and by rewarding such persons for their services by tying a significant portion of their total compensation package to the success of the Company. The Plan seeks to achieve this purpose by providing for Awards in the form of Options, Stock Appreciation Rights, Restricted Stock Awards, Performance Shares, Performance Units, Performance Cash Awards, *Restricted Stock Units*, Deferred Compensation Awards and other Stock-Based Awards as described below.

(Emphasis added).

39.    Pursuant to the 2005 Plan, the maximum aggregate number of shares of common stock that may be issued under the 2005 Plan was 4,886,000 shares, which equals (i) the 1998 Plan's authorized pool of 4,386,000 shares plus (ii) 500,000 shares.

40.    On October 28, 2008, the Company's shareholders approved an amendment to the 2005 Plan to increase the aggregate number of shares of common stock reserved for issuance under the 2005 Plan by 500,000 shares to 5,386,000 (the "2008 Amendment").

41.    On October 27, 2010, the Company's shareholders approved a second amendment to the 2005 Plan to increase the aggregate number of shares of common stock reserved for issuance under the 2005 Plan by another 500,000 shares to 5,886,000 (the "2010 Amendment").

42.    In seeking shareholder approval of the 2010 Amendment, however, Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker failed to disclose to shareholders that they had already granted, and subsequently issued shares in settlement of, Restricted Stock Units well in excess of the Restricted Stock Limit.  Indeed, as of October 2010, the Board had already granted Company officers, including the Officer Defendants, a total of ***740,000*** Restricted Stock Units, ***nearly 50% more*** than could be settled in accordance with the Restricted Stock Limit.

43.    The 2005 Plan, as amended in 2008 and 2010, contains the Restricted Stock Limit, which provides that "in no event shall more than five hundred thousand (500,000) shares in the aggregate be issued under the Plan pursuant to the exercise or settlement of … Restricted Stock Unit[s]."

44.    The Restricted Stock Limit has remained at 500,000 shares throughout the existence of the 2005 Plan and was not increased pursuant to the 2008 Amendment or the 2010 Amendment.

### Restricted Stock Activity

45.    There were no Restricted Stock Units granted during FY 2006 or prior to March 31, 2006.

46.     According to the Company's Form 10-K filed with the SEC on June 12, 2009 (the "2009 10-K"), the following table summarizes Restricted Stock Unit activity during FY 2007, 2008 and 2009:

| | Number of Shares | Weighted Average Grant Date Fair Value |
|---|---|---|
| **Unvested at March 31, 2006** | — | $ — |
| Granted | 305,000 | 24.56 |
| Vested | — | — |
| Canceled or forfeited | (10,000) | 21.43 |
| **Unvested at March 31, 2007** | 295,000 | $ 24.66 |
| Granted | 267,000 | 21.73 |
| Vested | (22,000) | 25.06 |
| Cancelled or forfeited | (46,000) | 23.11 |
| **Unvested at March 31, 2008** | 494,000 | $ 23.21 |
| Granted | 254,000 | 23.68 |
| Vested | (45,000) | 23.34 |
| Cancelled or forfeited | (13,000) | 20.09 |

47.     According to the Company's Form 10-K filed with the SEC on June 14, 2012 (the "2012 10-K"), the following table summarizes Restricted Stock Unit activity during FY 2010, 2011 and 2012:

| | Number of Shares | Weighted Average Grant Date Fair Value |
|---|---|---|
| **Unvested at March 31, 2009** | 690,000 | $ 23.43 |
| Granted | 309,000 | 18.33 |
| Vested | (75,000) | 23.72 |
| Canceled or forfeited | (60,000) | 23.56 |
| **Unvested at March 31, 2010** | 864,000 | $ 21.57 |
| Granted | 333,000 | 24.45 |
| Vested | (244,000) | 23.43 |
| Canceled or forfeited | (13,000) | 23.14 |
| **Unvested at March 31, 2011** | 940,000 | $ 22.09 |
| Granted | 436,000 | 27.25 |
| Vested | (237,000) | 22.12 |

| | | |
|---|---|---|
| Canceled or forfeited | (19,000) | 24.03 |
| **Unvested as of March 31, 2012** | 1,120,000 | $  24.06 |

48.   According to the Company's Form 10-Q filed with the SEC on August 9, 2012, the following table summarizes Restricted Stock Unit activity for the first quarter of FY 2013:

| | Time-Based Restricted Stock Units | | Performance-Based Restricted Stock Units[1] | |
|---|---|---|---|---|
| | Number of Shares | Weighted Average Grant Date Fair Value | Number of Shares | Weighted Average Grant Date Fair Value |
| Nonvested at March 31, 2012 | 1,120,000 | $  24.06 | - | $  - |
| Granted | 120,000 | 35.62 | 21,000 | 35.62 |
| Vested | (197,000) | 23.99 | - | - |
| Canceled or forfeited | (7,000) | 24.95 | - | - |
| Nonvested at June 30, 2012 | 1,036,000 | $  25.40 | 21,000 | $  35.62 |

### Restricted Stock Unit Awards to the Officer Defendants

49.   According to the Company's SEC filings, the Board has granted, and the Officer Defendants and others have received, Restricted Stock Units far in excess of those that could be settled in accordance with the Restricted Stock Limit, as follows:

### FY 2007

| Recipients | Restricted Stock Units Received |
|---|---|
| Clinton H. Severson | 90,000 |
| Alberto R. Santa Ines | 20,000 |
| Kenneth P. Aron | 20,000 |
| Vladimir E. Ostoich | 20,000 |
| Robert B. Midler | 20,000 |

**FY 2007 OFFICER TOTAL**    **170,000**
**RUNNING OFFICER TOTAL**    **170,000**

---

[1]  Starting in FY 2013, the Company grants performance-based Restricted Stock Units, where vesting is based on achievement of corporate annual performance targets.  During the first quarter of FY 2013, the Board approved the grant of 84,000 performance-based Restricted Stock Units, of which approximately 21,000 shares have been granted. Because each annual performance target is set at the start of each respective single-fiscal-year performance period, only 25% of the total performance-based Restricted Stock Unit awards are deemed granted each year over a four-year period.

### FY 2008

| Recipients | Restricted Stock Units Received |
|---|---|
| Clinton H. Severson | 50,000 |
| Alberto R. Santa Ines | 20,000 |
| Kenneth P. Aron | 20,000 |
| Vladimir E. Ostoich | 20,000 |
| Robert B. Midler | 20,000 |

**FY 2008 OFFICER TOTAL**          **130,000**
**RUNNING OFFICER TOTAL**          **300,000**

### FY 2009

| Recipients | Restricted Stock Units Received |
|---|---|
| Clinton H. Severson | 50,000 |
| Alberto R. Santa Ines | 20,000 |
| Kenneth P. Aron | 20,000 |
| Vladimir E. Ostoich | 20,000 |
| Christopher M. Bernard | 20,000 |

**FY 2009 OFFICER TOTAL**          **130,000**
**RUNNING OFFICER TOTAL**          **430,000**

### FY 2010

| Recipients | Restricted Stock Units Received |
|---|---|
| Clinton H. Severson | 55,000 |
| Alberto R. Santa Ines | 25,000 |
| Kenneth P. Aron | 25,000 |
| Vladimir E. Ostoich | 25,000 |
| Martin V. Mulroy | 25,000 |

**FY 2010 OFFICER TOTAL**          **155,000**
**RUNNING OFFICER TOTAL**          **585,000**

### FY 2011

| Recipients | Restricted Stock Units Received |
|---|---|
| Clinton H. Severson | 55,000 |
| Alberto R. Santa Ines | 25,000 |
| Kenneth P. Aron | 25,000 |
| Vladimir E. Ostoich | 25,000 |
| Donald P. Wood | 25,000 |

| FY 2011 OFFICER TOTAL | 155,000 |
| RUNNING OFFICER TOTAL | 740,000 |

### FY 2012

| Recipients | Restricted Stock Units Received |
| --- | --- |
| Clinton H. Severson | 55,000 |
| Alberto R. Santa Ines | 25,000 |
| Kenneth P. Aron | 25,000 |
| Vladimir E. Ostoich | 25,000 |
| Donald P. Wood | 25,000 |

| FY 2012 OFFICER TOTAL | 155,000 |
| RUNNING OFFICER TOTAL | 895,000 |

### FY 2013

| Recipients | Restricted Stock Units Received |
| --- | --- |
| Clinton H. Severson | 23,000 |
| Alberto R. Santa Ines | 10,500 |
| Kenneth P. Aron | 10,500 |
| Vladimir E. Ostoich | 10,500 |
| Donald P. Wood | 10,500 |

| FY 2013 OFFICER TOTAL | 65,000 |
| RUNNING OFFICER TOTAL | 960,000 |

50.     Since FY 2007, the Board, based on the approval of the Compensation Committee,[2] has granted 960,000 Restricted Stock Units to the Officer Defendants and other Company officers. This number represents ***460,000 shares*** in excess of those that could be settled in accordance with the Restricted Stock Limit.  Since FY 2007, the Board has granted to the Officers Defendants and other employees a total of 2,045,000 Restricted Stock Units, some ***1,545,000 shares*** beyond those that could be settled in accordance with the Restricted Stock Limit.

### The Company Admits It Violated the 2005 Plan

51.     On August 28, 2012, the Company filed with the SEC the August 28, 2012 8-K reporting the Company's receipt of a letter from the Listing Qualifications Office of NASDAQ

---

[2] According to the 2012 10-K, "the Compensation Committee approves all restricted stock unit grants to [the] Executive Officers and other executive officers."

informing the Company that it had failed to comply with Listing Rule 5635(c), which requires listed companies to obtain stockholder approval for material amendments to an equity compensation plan.

52.     Specifically, in the August 28, 2012 8-K the Company admitted that it "exceeded the full value award limit" because it purportedly incorrectly believed that "such limit applied to each 500,000-share increase to the overall share reserve increase approved by stockholders in 2005, 2008 and 2010." According to the August 28, 2012 8-K, as of August 28, 2012, the Company had issued *870,179* shares of Common Stock upon settlement of Restricted Stock Units granted under the 2005 Plan, some *370,179* shares in excess of the Restricted Stock Limit.

53.     The Company claims that on August 22, 2012, it reported to the Listing Qualifications Office of NASDAQ the violation and the Company's proposed plan to regain compliance with Listing Rule 5635(c). On August 28, 2012, the Listing Qualifications Office provided to the Company a letter "concurring in the Company's view that the issuance of shares in settlement of restricted stock units in excess of the full value award limit caused the Company to fail to satisfy the shareholder approval requirement of Listing Rule 5635(c)" and "agreeing to the Company's proposed remediation plan of amending the [2005] Plan to eliminate the full value award limit and seeking shareholder approval of such amendment at its 2012 annual shareholders meeting."

**The Company Seeks to Eliminate the Restricted Stock Limit**

54.     On September 17, 2012, the Company filed with the SEC the 2012 Proxy setting the Company's Annual Meeting for October 24, 2012 and soliciting stockholder votes at the Annual Meeting. Specifically, the 2012 Proxy seeks stockholder votes to amend the 2005 Plan by approving, *inter alia*, (1) an increase in the aggregate number of shares of common stock reserved for issuance under the 2005 Plan of 900,000 shares, to bring the total to 6,786,000 (the "900,000 Share Increase"); and (2) the Restricted Stock Limit Amendment. However, the 2012 Proxy is materially false and misleading. Indeed, the 2012 Proxy completely fails to disclose *any* information regarding the purposes for and effects of the Restricted Stock Limit Amendment.

55.     The 2012 Proxy states that in July 2012 the Board approved the 900,000 Share Increase and in August 2012 the Compensation Committee approved the Restricted Stock Limit Amendment.  According to the 2012 Proxy, Defendants would have the Company's stockholders believe that after the Board met in July 2012 to approve the 900,000 Share Increase, the Compensation Committee separately met sometime in August 2012 and determined for no particular reason to approve the Restricted Stock Limit Amendment.  A reasonable stockholder would want to know that the Company has admittedly violated the Restricted Stock Limit, which is not disclosed in the 2012 Proxy, and why and under what circumstances the Compensation Committee adopted the Restricted Stock Limit Amendment, in particular, whether the committee adopted the Restricted Stock Limit Amendment because of the Company's admitted violation of the Restricted Stock Limit, which is likewise not disclosed in the 2012 Proxy.

56.     Nor does the 2012 Proxy disclose the effect of the Restricted Stock Limit Amendment on the Company's outstanding equity awards.  As of August 28, 2012, the Company had issued 370,179 shares of common stock in excess of the Restricted Stock Limit.  The 2012 Proxy fails to disclose this material fact and does not disclose whether or how the stockholders' approval or disapproval of the Restricted Stock Limit Amendment will affect these 370,179 invalidly-issued shares.  Furthermore, since FY07 the Board has issued a total of 2,045,000 Restricted Stock Units, the majority of which have not yet been settled.  The 2012 Proxy also does not disclose this material fact, nor does it disclose whether or how the stockholders' approval or disapproval of the Restricted Stock Limit Amendment will affect the settlement of these outstanding Restricted Stock Units.

57.     In short, the 2012 Proxy is replete with material misstatements and omissions of material fact concerning the purposes and effects of the Restricted Stock Limit Amendment. Accordingly, the 2012 Proxy is materially false and misleading and unlawfully deprives Abaxis stockholders of their right to cast a fully informed vote at the Annual Meeting.

## THE GRANTOR DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

58.     The Grantor Defendants exceeded the bounds of the law and legitimate business judgment by granting, and subsequently issuing shares of common stock in settlement of, Restricted Stock Units in excess of the Restricted Stock Limit, thereby violating the 2005 Plan.

59.     Grantor Defendants Bastiani, Casey, Singh, Evenhuis, and Tucker, as members of the Compensation Committee, further breached their fiduciary duties by approving and recommending to the Board that it grant Restricted Stock Units in excess of those that could be settled in accordance with the Restricted Stock Limit.

60.     Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker further breached their fiduciary duties by seeking shareholder approval of the 2010 Amendment without disclosing to shareholders that they had already granted, and subsequently issued shares of common stock in settlement of, Restricted Stock Units well in excess of the Restricted Stock Limit.

61.     The foregoing misconduct was unjustifiable and constituted a gross breach of the Grantor Defendants' fiduciary duties as directors of the Company.  The Grantor Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants and other employees at the expense of the Company.

62.     As a direct and proximate result of the Grantor Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the issuance of hundreds of thousands of *ultra vires* shares in excess of the Restricted Stock Limit.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

63.     Plaintiff brings this action derivatively in the right for the benefit of Abaxis to redress defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

64.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

65.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

66.     At the time this action was commenced, the Board consisted of six directors: Board Defendants Bastiani, Casey, Evenhuis, Severson, Singh and Altman. The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

    a.    Grantor Defendants Bastiani, Casey, Singh, and Evenhuis, because as members of the Compensation Committee they directly participated in and recommended that the Board grant Restricted Stock Units in excess of those that could be settled in accordance with the Restricted Stock Limit, as alleged herein, and therefore they are substantially likely to be held liable for the misconduct complained of herein;

    b.    Grantor Defendants Bastiani, Casey, Evenhuis, Severson, and Singh, because as members of the Board they issued shares in excess of the Restricted Stock Limit, as alleged herein, and therefore they are substantially likely to be held liable for the misconduct complained of herein; and

    c.    Director Defendant Severson, because he is directly interested in his receipt of shares improperly issued in settlement of Restricted Stock Units, as complained of herein.

67.     Demand is also excused because the misconduct complained of herein was not, and could not have been, the product of a good faith exercise of business judgment. On the contrary, the Grantor Defendants engaged in *ultra vires* conduct that is not and cannot be protected by the business judgment rule.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings certain claims in this action on its own behalf and as a class action on behalf of those who held Abaxis stock as of the close of business on August 31, 2012, which represents the record date for stockholders entitled to vote at the Annual Meeting (the "Class"). Excluded from the Class are the Individual Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Individual Defendant.

69.     This action is properly maintainable as a class action.

70.     The Class is so numerous that joinder of all members is impracticable.   As of August 31, 2012, there were 21,932,263 shares of Company stock outstanding.  Upon information and belief, there are thousands of members of the Class.

71.     There are questions of law and fact which are common to the Class, including, but not limited to:

a.     whether the 2012 Proxy contains materially misleading statements, or omits information necessary to render it not misleading;

b.     whether Plaintiff and the other members of the Class will be irreparably harmed by the wrongs complained of herein; and

c.     whether Plaintiff and the Class are entitled to injunctive relief.

72.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.   Plaintiff's claims are typical of claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  All Abaxis stockholders face the same threat that they will be forced to vote at the 2012 Annual Meeting based upon the materially false and misleading 2012 Proxy.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

73.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual Class members that would establish incompatible standards of conduct for the Board Defendants.

74.     The Board Defendants have acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or corresponding declaratory relief is appropriate respecting the Class as a whole.

75.     The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I

### Against Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker
### For Violation of § 14(a) of the Securities Exchange Act
### in Connection with the 2010 Amendment

76.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

77.     Plaintiff brings this Count I derivatively on behalf of the Company.

78.     Rule 14-A-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14-A-9.

79.     The proxy statement issued by Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker in connection with the shareholder vote on the 2010 Amendment, filed with the SEC on September 15, 2010 (the "2010 Proxy"), violated § 14(a) and Rule 14-A-9 because Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker omitted material facts necessary to make the 2010 Proxy not false and misleading, specifically, the fact that they had already violated the 2005 Plan because they had already granted, and issued shares of common stock in settlement of, Restricted Stock Units well in excess of the Restricted Stock Limit.

80.     The misrepresentations and omissions in the 2010 Proxy were material.  The 2010 Proxy was an essential link in the accomplishment of the continuation of Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker's unlawful issuance of shares in excess of the Restricted Stock Limit, as revelations of the truth would have immediately thwarted a continuation thereof.

81.     The Company was damaged as a direct and proximate result of the material misrepresentations and omissions in the 2010 Proxy, as alleged herein.

## COUNT II

### Against Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker
### For Breach of Fiduciary Duty
### in Connection with the 2010 Amendment

82.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

83.     Plaintiff brings this Count II derivatively on behalf of the Company.

84.     As alleged in detail herein, the Grantor Defendants owed the Company and its shareholders the fiduciary duty to make full, fair, and accurate disclosures to shareholders, including when seeking shareholder approval for Board actions.

85.     Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker breached their fiduciary duty of candor by issuing the false and misleading 2010 Proxy, as alleged herein.

86.     The Company was damaged as a direct and proximate result of Grantor Defendants Severson, Bastiani, Evenhuis, Singh, and Tucker's foregoing breaches of their fiduciary duties, as alleged herein.

## COUNT III

### Against Defendants Severson, Bastiani, Casey, Evenhuis, Singh, and Tucker
### For Breach of Fiduciary Duty
### in Connection with Violating the 2005 Plan

87.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

88.     Plaintiff brings this Count III derivatively on behalf of the Company.

89.     As alleged in detail herein, the Grantor Defendants owed the Company the fiduciary duties of loyalty and good faith to, among other things, exercise good faith in ensuring that the Company complied with all applicable federal and state laws, rules, regulations and requirements and the Company's governing documents, *e.g.*, the 2005 Plan, as amended, including acting only within the scope of their legal authority.

90.     Grantor Defendants Severson, Bastiani, Casey, Evenhuis, Singh, and Tucker breached their fiduciary duties of loyalty and good faith by granting, and subsequently issuing

shares of common stock in settlement of, Restricted Stock Units in excess of the Restricted Stock Limit and in violation of the 2005 Plan, as alleged herein.

91.     Grantor Defendants Bastiani, Casey, Singh, Evenhuis, and Tucker, as members of the Compensation Committee, further breached their fiduciary duties by approving and recommending to the Board that it grant Restricted Stock Units in excess of those that could be settled in accordance with the Restricted Stock Limit, as alleged herein.

92.     The Company was damaged as a direct and proximate result of Grantor Defendants Severson, Bastiani, Casey, Evenhuis, Singh, and Tucker's foregoing breaches of their fiduciary duties, as alleged herein.

## COUNT IV

### Against Defendants Severson, Santa Ines, Aron, Ostoich, Wood and Mulroy
### For Unjust Enrichment

93.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

94.     Plaintiff brings this Count IV derivatively on behalf of the Company.

95.     Officer Defendants Severson, Santa Ines, Aron, Ostoich, Wood and Mulroy received excessive and unwarranted grants of Restricted Stock Units and shares of common stock in excess of the Restricted Stock Limit and in violation of the 2005 Plan, as alleged herein.

96.     It would be unconscionable and against the fundamental principles of justice, equity, and good conscience, for Officer Defendants Severson, Santa Ines, Aron, Ostoich, Wood and Mulroy to retain the excessive, unwarranted, and *ultra vires* payments and benefits they received.

97.     To remedy the Officer Defendants' unjust enrichment, the Court should enter an order compelling them to disgorge to the Company the shares they have received in excess of the Restricted Stock Limit and in violation of the 2005 Plan, as well as any proceeds they derived therefrom, and any Restricted Stock Units they have received in excess of those that could be settled in accordance with the Restricted Stock Limit, as well as any proceeds they derived therefrom.

**COUNT V**

**Against Defendants Severson, Bastiani, Casey, Evenhuis, Singh and Altman**
**For Breach of Fiduciary Duty**
**in Connection with the 2012 Proxy**

98.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

99.     Plaintiff brings this Count V on behalf of itself and the Class

100.     As alleged in detail herein, Board Defendants Severson, Bastiani, Casey, Evenhuis, Singh and Altman have breached their fiduciary duty to Plaintiff and the Class by causing the Company to file with the SEC and disseminate to Class members the materially false and misleading 2012 Proxy.  The failure to fully and fairly disclose all material information in the 2012 Proxy will prevent Plaintiff and the Class from making an adequately informed decision at the Annual Meeting regarding the Restricted Stock Limit Amendment.

101.     Unless the Annual Meeting is enjoined by the Court, Board Defendants Severson, Bastiani, Casey, Evenhuis, Singh and Altman will continue to breach their fiduciary duties owed to Plaintiff and the other members of the Class.  As a result of Board Defendants Severson, Bastiani, Casey, Evenhuis, Singh and Altman's actions, Plaintiff and the other members of the Class will be irreparably harmed.

102.     Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding the Company the amount of damages sustained by the Company as a result of the Grantor Defendants' statutory violations and breaches of fiduciary duties;

B.     Ordering the Officer Defendants to disgorge to the Company the shares they have received in excess of the Restricted Stock Limit and in violation of the 2005 Plan, as well as any proceeds they derived therefrom, and any Restricted Stock Units they have received in excess of those that could be settled in accordance with the Restricted Stock Limit, as well as any proceeds they derived therefrom;

C.     Enjoining the Annual Meeting unless and until the Board Defendants cure the materially false and misleading 2012 Proxy;

D.     Granting appropriate equitable relief to remedy the Grantor Defendants' statutory violations and breaches of fiduciary duties;

E.   Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accounts' and experts' fees, costs and expenses; and

F.   Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

DATED:  October 1, 2012

**KESSLER TOPAZ MELTZER & CHECK, LLP**

Ramzi Abadou (222567)
Erik D. Peterson (257098)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Phone: (415) 400-3000
Fax: (415) 400-3001

-and-

Eric L. Zagar (250519)
James H. Miller
Matthew A. Goldstein
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (267) 948-2512

**SAXENA WHITE, P.A.**
Joseph E. White, III
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Phone: (561) 394-3399

*Attorneys for Plaintiff*

## VERIFICATION

I, Stephen Olish, Executive Director of the Police Retirement System of St. Louis, verify that I have reviewed the foregoing Verified Shareholder Derivative Complaint, and that the allegations as to myself and my own actions are true and correct and that the other allegations upon information and belief are true and correct.

Dated: _Sept   28_, 2012


_Stephen S. Olish_
(Signature of Stephen Olish)