**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ST. LOUIS POLICE RETIREMENT SYSTEM, *on behalf of itself and All Others Similarly Situated and Derivatively on behalf of Nominal Defendant* ABAXIS, INC.,<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>CLINTON H. SEVERSON, *et al.*,<br><br>　　　Defendants,<br><br>ABAXIS, INC.,<br><br>　　　Nominal Defendant. | Case No.: 12-CV-5086 YGR<br><br>**ORDER GRANTING IN PART MOTION OF PLAINTIFF ST. LOUIS POLICE RETIREMENT SYSTEM FOR PRELIMINARY INJUNCTION** |

Plaintiff St. Louis Police Retirement System ("Plaintiff") brings this shareholder class action and derivative action against Defendants Clinton H. Severson, Alberto R. Santa Ines, Kenneth P. Aron, Vladimir E. Ostoich, Donald P. Wood, Martin V. Mulroy, Richard J. Bastiani, Michael D. Casey, Henk J. Evenhuis, Prithipal Singh, Vernon E. Altman, and Ernest S. Tucker ("Defendants") and Abaxis, Inc. ("Abaxis" or "the Company") as nominal defendant.  Plaintiffs allege claims for violation of section 14(a) of the Securities Exchange Act, breach of fiduciary duty, and unjust enrichment.

Plaintiff has filed a Motion for Preliminary Injunction as to the section 14(a) claim seeking to enjoin the October 24, 2012 Abaxis Annual Shareholders Meeting on the grounds that the Company's proxy statement issued in advance of its 2012 annual meeting was misleading because

it failed to disclose material information to shareholders related to their request to approve a modification to an equity incentive plan issued in 2005 and thereafter modified.

Having carefully considered the papers submitted, the parties' evidence and arguments, as well as the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART** the Motion for Preliminary Injunction.

## SUMMARY OF FACTS

The facts essential to the motion are not in dispute. Abaxis is a California corporation located in Union City, California. Abaxis develops, manufactures, markets and sells portable blood analysis systems for use in human and veterinary patient care to provide clinicians with rapid blood constituent measurements. (Verified Complaint, Dkt. No. 1, ¶ 15.)

In 2005, Abaxis adopted and shareholders approved an equity incentive plan ("the Plan"). Under the 2005 Plan as originally approved, the maximum aggregate number of shares of common stock that could be issued was 4,886,000 shares. (Declaration of Alberto E. Santa Ines ["Santa Ines Decl."], Dkt. No. 28, Ex. B at 14.) The 2005 Plan states, "in no event shall more than five hundred thousand (500,000) shares in the aggregate be issued under the Plan pursuant to the exercise or settlement of . . . Restricted Stock Unit Awards" and some other specified forms of awards ("Full Value Awards")." (Santa Ines Decl. Ex. A at 12.) This provision (the "Full Value Award Limit") thus restricts the Company from issuing more than 500,000 shares of stock upon the settlement of any restricted stock units ("RSUs") and other Full Value Awards under the Plan. (*Id.*) "Settlement" refers to the issuance of shares upon the vesting of an RSU. RSUs are an obligation of the Company to issue a fixed number of shares of common stock on a given date in the future, subject to the RSU holder's continued service with the Company through a prescribed vesting date or other

vesting criteria. Shares are not issued unless the RSU holder remains in the service of the Company through a vesting date. (Santa Ines Decl. Exh. E at 17-18.)

On October 28, 2008, the Company's shareholders approved an amendment to the Plan to increase the aggregate number of shares of common stock reserved for issuance under the Plan by 500,000 shares to 5,386,000. (Santa Ines Decl., Ex. D.) On October 27, 2010, the Company's shareholders approved a second amendment to the Plan to increase the aggregate number of shares of common stock reserved for issuance under the Plan by another 500,000 shares to 5,886,000. (*Id.*) However, the Full Value Award Limit of 500,000 shares was never increased in connection with these amendments or otherwise.

Since 2007, the Company has issued only RSUs under the Plan. (Verified Complaint Ex. B at 42.) As of August 28, 2012, the Company had issued 870,179 shares of common stock upon settlement of RSUs granted under the Plan since October 2005, *i.e.,* 370,179 shares in excess of the 500,000 Full Value Award Limit.

Around August of 2012, the Company realized it had issued more shares in settlement of RSUs than allowable under the Plan's Full Value Award Limit. (Verified Complaint Ex. A; Santa Ines Decl. ¶ D.) The Company promptly reported both the information to NASDAQ's Listing and Qualifications Department, and that the assessment that it potentially had violated NASDAQ Listing Rule 5635(c), requiring listed companies to obtain shareholder approval for equity compensation plans and material amendments to an equity compensation plan. (Santa Ines Decl. ¶ D.) The Company proposed to remedy the situation by amending the Plan to remove the Full Value Award Limit. (*Id.*) NASDAQ consented to the Company's proposed compliance plan. (*Id.*) On August 28, 2012, the Company filed a Form 8-K with the SEC setting forth the following:

> On August 28, 2012, Abaxis, Inc. (the "Company") received a letter from the staff of the Listing Qualifications Office of the NASDAQ Stock Market determining

> that the Company failed to comply with Listing Rule 5635(c) that listed companies obtain stockholder approval for material amendments to an equity compensation plan.
>
> The Company maintains its 2005 Equity Incentive Plan, originally approved by shareholders in October 2005 and subsequently amended by the Company and approved by shareholders in October 2008 and October 2010 (the "Plan"), under which it may make awards of restricted stock units and other equity-based awards. The Plan contains a provision that no more than 500,000 shares may be granted under the plan upon exercise or settlement of "full value awards," which include [RSUs]. In connection with the preparation of the proxy statement for the Company's 2012 annual meeting of shareholders, the Company determined that it issued more shares in settlement of [RSUs] than are currently permitted under the full value award limit. As of August 28, 2012, the Company had issued 870,179 shares of Common Stock upon settlement of [RSUs] granted under the Plan since October 2005, and thereby exceeded the full value award limit in the 2005 Plan.
>
> The Company reported the foregoing to the Listing Qualifications Office of the NASDAQ Stock Market and submitted its proposed plan to regain compliance with Listing Rule 5635(c) to the Listing Qualifications Office of NASDAQ on August 22, 2012. On August 28, 2012, the Listing Qualification Officer provided a letter to the Company indicating that the Company's issuance of shares in settlement of [RSUs] had failed to satisfy the shareholder approval requirement of Listing Rule 5635(c), and agreed to the Company's proposed remediation plan of amending the Plan to eliminate the full value award limit upon approval of its shareholders at its 2012 annual shareholders meeting.

(Verified Complaint Ex. A "Form 8-K".)[1]

On September 17, 2012, the Company filed with the SEC and distributed to shareholders its 2012 Proxy Statement for the Annual Meeting. (Verified Complaint Ex. B.) The 2012 Proxy Statement includes four proposals on which shareholders will vote at the Annual Meeting: (1) the election of directors; (2) an amendment to the Plan, which would, among other things, remove the Full Value Award Limit and increase the total number of shares available under the Plan by 900,000 shares ["the Proposed Amendment"]; (3) an advisory vote on executive compensation; and (4) the ratification of the Company's independent registered public accounting firm. (*Id.*)

With respect to Item 2, the 2012 Proxy Statement summarizes the nature of the item as follows:

---

[1] There is no evidence to suggest that Defendants transmitted the Form 8-K directly to shareholders, by mail or otherwise.

4

> To (i) approve an amendment to the Company's 2005 Equity Incentive Plan (the "2005 Plan") to, among other things, increase the aggregate number of shares of common stock authorized for issuance under the 2005 Plan by 900,000 shares and increase the maximum number of shares that may be issued pursuant to incentive stock options and (ii) reapprove the Internal Revenue Code Section 162(m) performance criteria and award limits of the 2005 Plan to permit the Company to continue to grant awards to our key officers that qualify as performance based compensation under Rule 162(m) of the Internal Revenue Code..

(*Id*.) In the section entitled "What Am I Voting On?," Item 2 is summarized as:

> Approval of an amendment to the Company's 2005 Equity Incentive Plan (the "2005 Plan") to, among other things, increase the aggregate number of shares of common stock authorized for issuance under the 2005 Plan by 900,000 shares and increase the maximum number of shares that may be issued pursuant to incentive stock options and reapproval of the Internal Revenue Code Section 162(m) performance criteria and award limits of the 2005 Plan.

(*Id*. at 1.)

The 2012 Proxy Statement includes a thirteen-page discussion of the Proposed Amendment and the 2005 Plan (*id.* at 15-27) and attaches the proposed 2005 Plan as amended. (*Id.* at Appendix A.) The 2012 Proxy Statement explains that the proposed amendment would "eliminate the limitation on the number of shares that may be issued pursuant to restricted stock awards, restricted stock units and performance share awards granted under the 2005 plan." (*Id.*) While the 2012 Proxy Statement includes a description of the 2005 Plan as amended, it does not: (1) incorporate or refer to the Form 8-K; (2) indicate that RSUs have been settled in excess of the Full Value Award Limit; or (3) state that the amendment is necessary to regain compliance with Listing Rule 5635(c) with NASDAQ. It generally explains the reasons for the need for re-approval of the Plan, and the potential consequences of a failure to reapprove the existing provisions of the plan such as tax consequences for the Company. (*Id.* at p. 15). However, it does not explain the reasons for or consequences of failure to approve the Proposed Amendment. (*Id.*) The 870,179 figure disclosed in the Form 8-K does not appear in the 2012 Proxy Statement.

5

**DISCUSSION**

A plaintiff seeking a preliminary injunction must establish: "(1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiffs favor; and (4) that an injunction is in the public interest." *Pimentel v. Dreyfus,* 670 F.3d 1096, 1105 (9th Cir. 2012) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### A.   Likelihood of Success on the Merits

With respect to likelihood of success on the merits, the Court must decide whether Plaintiffs have offered sufficient evidence to suggest that they can prevail, by a preponderance of the evidence, on their claim that Defendants have failed to disclose all material facts bearing on the decision before the shareholders in the proxy vote.  "Directors owe a duty to honestly disclose all material facts when they undertake to give out statements about the business to stockholders." *Hill v. State Farm Mut. Auto. Ins. Co.,* 166 Cal. App. 4th 1438, 1490 (Cal. Ct. App. 2008) *(quoting Kelly v. Bell,* 254 A.2d 62, 71 (Del. Ch. 1969)). The "obligation [to disclose] attaches to proxy statements and any other disclosures in contemplation of stockholder action." *Arnold v. Soc'y or Sav. Bancorp, Inc.,* 650 A.2d 1270, 1277 (Del. 1994).

Section 14(a) of the Securities Exchange Act makes it unlawful for directors to provide information that is false or misleading with respect to any material fact in a proxy statement. *See Charming Shoppes Inc. v. Crescendo Partners II, L.P.*, 557 F. Supp. 2d 621, 627-29 (E.D. Pa. 2008) (citing 15 U.S.C. § 78n(a) and 17 C.F.R. § 240.14a-9).  "The question of materiality. . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976).  Thus, a fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in

deciding how to vote." *Id*. at 449. An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*; *see also Miller v. Thane Int'l, Inc.,* 519 F.3d 879, 889 (9th Cir. 2008) (same).

"Material not included in the proxy statement is generally not charged to the knowledge of the stockholder." *Shaev v. Saper*, 320 F.3d 373, 381 (3d Cir. 2003). "A proxy statement should inform, not challenge the reader's critical wits." *Id.* at 379 (citing *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1097 (1991)). "That an investor could hypothetically conduct research to clarify ambiguities and discover omissions in the proxy statement does not relieve the Board of its obligations under Rule 14a–9." *Id.* Shareholders are entitled to a candid disclosure of all material facts and should not be required to "ask a series of detailed questions to elicit the material fact." *Turner v. Bernstein*, 776 A.2d 530, 544-45 (Del. Ch. 2000).

In *Shaev*, the Third Circuit held that a proxy statement seeking shareholder approval of a year-2000 amendment to the company's management incentive plan was misleading. *Shaev*, 320 F.3d at 381. The proxy statement solicited shareholder approval of the 2000 amendment to the plan, but did not include the material features of the 1997 plan or its 1999 supplement. *Id.* The court there rejected the company's argument that a proxy statement was sufficient if it contained enough information for a shareholder to deduce that a separate, predecessor plan existed and to contact the company to obtain past SEC filings regarding that plan. *Id.* Simply providing "cryptic references" from which a shareholder might infer that other material information existed was not sufficient to comply with the company's disclosure obligations. *Id.*

Similarly, in *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198-200 (2d Cir. 1993), the Second Circuit held that information appearing in a company's 10-K Report to

7

the SEC, but not distributed to shareholders, was not "part of the reasonably available mix" for purposes of the directors' duty of disclosure. Much like the 2012 Proxy Statement here, the proxy statement in *United Paperworkers* did not mention the SEC filing, much less suggest that there was any information relevant to the proxy vote therein. *Id.* As the court held, "a reasonable shareholder who was interested in [the subject of the vote] and had read both the Proxy Statement and the annual report would have received no indication that additional information pertinent to the [vote] was available in the 10-K Report." *Id.* at 200.

Moreover, a proxy statement that fails to "accurately depict the purposes or effects" of the matters before the shareholders for a vote may be misleading. *ODS Technologies, L.P. v. Marshall*, 832 A.2d 1254, 1260-61 (Del. Ch. 2003). In *ODS Technologies, L.P.,* the court found that failure to include the reasons for certain amendments deprived shareholders of information material to their vote. The court held that the board was required to provide a "full and fair explanation of the rationale for a proposal that directors are recommending stockholders to approve [. . . and] to disclose its motivations candidly." *Id.*

Defendants argue that they are not required to repeat information that was contained in the Form 8-K, since such information was readily available to shareholders. However, Defendants authorities for that proposition do not support it. For instance, in *Seibert v. Sperry Rand Corp.*, 586 F.2d 949 (2d Cir. 1978), the court easily concluded that information need not be disclosed in a proxy statement where it was not material and, in addition, was widely known through countrywide press coverage and "a nationwide consumer boycott . . . accompanied by massive media advertising." *Id.* at 952. Likewise, in *Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, C-06-01711 RMW, 2007 WL 1223220 (N.D. Cal. Mar. 1, 2007), the trial court found that plaintiffs there had not shown that any of the matters omitted from the statements were material to the

matters upon which shareholders were voting. In *Newman v. Warren*, 684 A.2d 1239 (Del. Ch. 1996), the court held that a proxy statement was not misleading where it did not disclose dissenting director's reasons for not supporting a proposition. Finally, in *Brinckerohoff*, the district court refused to accept the argument that one part of the proxy materials should be considered standing alone and apart from other proxy materials sent to shareholders on that same vote for purposes of determining whether the materials were misleading. *Brinckerhoff v. Texas Eastern Products Pipeline Co., LLC,* 2008 WL 4991281 (Del. Chanc. Ct., November 25, 2008).  None of these cases support the notion that information in a Form 8-K that is not referenced or incorporated into the proxy statement should nevertheless be considered to establish that directors carried out their affirmative duties to disclose all material information related to a shareholder vote.

Here, the 2012 Proxy Statement does not incorporate the Form 8-K by reference or mention it at all, much less include the information contained therein.  The 2012 Proxy Statement does not "accurately depict the purposes or effects" of the Proposed Amendment to the 2005 Plan.  This information is material to the shareholders' vote.  As a result, the evidence before the Court establishes that Plaintiff is likely to succeed on its claim that Defendants have failed to disclose material information in violation of their duties under Section 14(a) of the Securities Exchange Act.

**B.  Likelihood of Irreparable Injury**

"The threat of an uninformed stockholder vote constitutes irreparable harm." *ODS Techs.*, 832 A.2d at 1262; *see also In re Pure Res., Inc., Shareholders Litig.*, 808 A.2d 421, 452 (Del. Ch. 2002) ("This court has recognized that irreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information.") Generally, disclosure deficiencies cannot be remedied effectively by an "after-the-fact damages" case. *In re Staples, Inc. Shareholders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001).  Thus, "[i]t is

appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected." *Id.*

Here, the alternative of invalidating the election at a later date, and unwinding any transactions that might be made in reliance on the results of a tainted election, all point to the conclusion that a *post hoc* remedy is inadequate. Plaintiff would be irreparably injured if the election were to go forward under these circumstances.

### C. Balance of Hardships and Public Policy Considerations

The balance of hardships favors enjoining a vote in which shareholders were not provided material information. Defendants argue that the Company could be delisted by NASDAQ if the proposed amendments to the 2005 Plan are not approved at the Annual Meeting on October 24, 2012. However, they offer no evidence to suggest that this is anything more than speculation, or that a brief postponement would otherwise jeopardize the Company. A fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act Again is in the best interests of shareholders and the shareholding public generally. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001) ("assuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public").

### D. Bond

Rule 65(c) of the Federal Rules of Civil Procedure requires that the party seeking an injunction must post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. Rules Civ. Proc. 65(c). Defendants seek a bond in the amount of $100,000 based upon the costs of postponing the Annual Meeting, amending the proxy statement, and mailing to shareholders.

(Santa Inez Decl. ¶11.) The Court finds this amount reasonable in light of the actions that Defendants will be required to undertake.

## CONCLUSION

In light of the foregoing, and pending further Order of the Court:

The vote on the Proposed Amendment (Item 2 in the 2012 Proxy Statement) at the Abaxis Annual Meeting, presently scheduled to be held on October 24, 2012, is enjoined in order for the Board Defendants to supplement the 2012 Proxy Statement to disclose:

a. that the Company issued common stock upon settlement of RSUs in excess of the Full Value Limit in the 2005 Plan. As of August 29, 2012, the Company had issued 870,179, or 370,179 shares of common stock in excess of the Restricted Stock Limit;

b. that the Proposed Amendment is being recommended by the Company and presented for a vote of the shareholders because the settlement of RSUs in excess of the limit without shareholder approval meant that the Company was out of compliance with Listing Rule 5635(c) of NASDAQ and the Proposed Amendment would put the Company back in compliance with that rule;

c. whether and how the stockholders' approval or disapproval of the Proposed Amendment will affect the 370,179 shares of common stock issued in excess of the Full Value Award Limit;

d. whether and how the stockholders' approval or disapproval of the Proposed Amendment will affect the settlement of the outstanding RSUs.

The vote on the Proposed Amendment (Item 2) shall not take place unless and until the 2012 Proxy Statement has been supplemented and such supplemented proxy statement has been mailed to shareholders. The supplemental proxy statement shall be in substantially the form

attached hereto as **Exhibit A,** and the reconvened meeting shall occur in no fewer than seven (7) calendar days after mailing, as agreed upon by the parties.

Only the vote on Item 2 is enjoined.  All other business at the Abaxis Annual Meeting may go forward.

Issuance of this preliminary injunction is contingent upon Plaintiff filing proof of issuance of a bond in the amount of $100,000.00 no later than **9:00 a.m. on October 24, 2012**.  Should Plaintiff fail to file proof of such undertaking by that time, this Order is and shall be dissolved without further order of the Court.

**IT IS SO ORDERED**.

**October 23, 2012**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

**EXHIBIT A**