**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eli R. Greenstein (217945)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Phone: (415) 400-3000
Fax: (415) 400-3001
egreenstein@ktmc.com

-and-

Eric L. Zagar (250519)
James H. Miller
Matthew A. Goldstein
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (267) 948-2512
ezagar@ktmc.com
jmiller@ktmc.com
mgoldstein@ktmc.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

ST. LOUIS POLICE RETIREMENT SYSTEM, On Behalf Of Itself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant ABAXIS, INC.,

Plaintiff,

v.

CLINTON H. SEVERSON, ALBERTO R. SANTA INES, KENNETH P. ARON, VLADIMIR E. OSTOICH, DONALD P. WOOD, MARTIN V. MULROY, RICHARD J. BASTIANI, MICHAEL D. CASEY, HENK J. EVENHUIS, PRITHIPAL SINGH, VERNON E. ALTMAN, AND ERNEST S. TUCKER,

Defendants,

and

ABAXIS, INC.

Nominal Defendant.

**CASE NO. 12-CV-05086-YGR**

**NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**NOTICE OF MOTION; RELIEF REQUESTED**

PLEASE TAKE NOTICE that on January 24, 2014, at 9:01 a.m., or at such other date and time as ordered by the Court, in the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiff St. Louis Police Retirement System will and hereby does move this Court to preliminarily approve the proposed settlement of the above-captioned action.

This motion for preliminary approval of the proposed settlement is based on this Notice of Motion; the Memorandum of Points and Authorities, *infra*; the Declaration of Eric L. Zagar submitted in support thereof; the pleadings, records, and papers on file in this action, and such other papers as may be filed at or before the hearing on this motion; and oral argument of counsel and any other matters that properly may be brought before the Court.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL HISTORY ..... 2

III. THE TERMS OF THE SETTLEMENT ..... 3

IV. LEGAL STANDARD ..... 6

A. Class Certification for Settlement Purposes is Proper ..... 6

1. Numerosity ..... 7

2. Commonality ..... 7

3. Typicality ..... 7

4. Adequacy ..... 8

5. Rule 23(b) ..... 8

B. The Settlement Should be Preliminarily Approved ..... 9

1. The Settlement is not a product of collusion ..... 9

2. The Settlement falls within the range of possible approval and has no obvious deficiencies ..... 10

3. No Abaxis stockholder will receive preferential treatment ..... 11

V. THE NOTICE IS ADEQUATE ..... 11

VI. PROPOSED SCHEDULE OF EVENTS ..... 12

VII. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilar v. Melkonian Enters., Inc.*,
No. 05-0032-OWW-LJO, 2007 WL 201180 (E.D. Cal. Jan. 24, 2007) .... 8

*In re Apple Inc. Sec. Litig.*,
No. 06-5208-JF-HRL, 2011 WL 1877988 (N.D. Cal. May 17, 2011) .... 8

*Bacas v. Way*,
No. 07-cv-0456, Stipulation of Settlement (S.D. Tex. Jan. 9, 2008) .... 10

*Bacas v. Way*,
No. 07-cv-0456, Order and Final Judgment (S.D. Tex. Apr. 1, 2008) .... 10

*City of Pontiac Gen. Employees' Ret. Sys. v. Langone*,
No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10, 2008) .... 11

*In re Cox Radio, Inc. S'holders Litig.*,
No. 4461-VCP, 2010 WL 1806616 (Del. Ch. May 6, 2010) .... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .... 8

*MWS Wire Indus., Inc. v. California Fine Wire Co., Inc.*,
797 F.2d 799 (9th Cir. 1986) .... 9

*Nottingham Partners v. Dana*,
564 A.2d 1089 (Del. 1989) .... 8-9

*In re NVIDIA Corp. Deriv. Litig.*,
No. 06-6110-SBA-JCS, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .... 6, 9, 11

*In re Rambus Inc. Deriv. Litig.*,
No. 06-3513-JF-HRL, Stipulation of Settlement (N.D. Cal. Oct. 29, 2008) .... 10

*In re Rambus Inc. Deriv. Litig.*,
No. 06-3513-JF-HRL, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .... 10

*In re Sanmina-SCI Corp. Deriv. Litig.*,
No. 06-03783-JF, Order (N.D. Cal. Feb. 27, 2009) .... 12

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .... 9, 10

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) .... 8

*In re Wireless Facilities, Inc. Sec. Litig.*,
253 F.R.D. 630 (S.D. Cal. 2008) .... 7

Case4:12-cv-05086-YGR Document98 Filed01/17/14 Page5 of 18

*Wright v. Linkus Enterprises, Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) .......... 6, 7

**Rules**

Fed. R. Civ. P. 23.1(c) .......... 11

Fed. R. Civ. P. 23(a)(2) .......... 7

Fed. R. Civ .P. 23(a)(3) .......... 7

Fed. R. Civ. P. 23(b) .......... 8

Fed. R. Civ. P. 23(c)(2)(A) .......... 11

Fed. R. Civ. P. 23(c)(2)(B) .......... 12

**Other Authorities**

2 McLaughlin on Class Actions § 6:7 (9th ed. 2012) .......... 6, 9

NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF
CASE NO. 12-CV-05086-YGR
- iii -

## I. INTRODUCTION

Plaintiff St. Louis Police Retirement System ("Plaintiff") submits this memorandum in support of its motion for preliminary approval of the proposed settlement (the "Settlement") of the claims brought on behalf of stockholders of Abaxis, Inc. ("Abaxis" or the "Company") against the Individual Defendants.[1]  The terms of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation"), submitted herewith.[2]

The Settlement is the result of extensive arm's-length negotiations between the Parties.  As a result of the pendency, prosecution, and settlement of the litigation, Abaxis has, in addition to making additional disclosures in connection with its 2012 Annual Meeting pursuant to the preliminary injunction issued by the Court on October 23, 2012, adopted (or will adopt) significant corporate governance measures that:  (i) directly address Plaintiff's allegations of improper equity compensation practices, (ii) are designed to preclude the recurrence of the wrongdoing alleged in the Action, and (iii) provide for additional reforms to Abaxis' executive compensation practices through, among other things, the adoption of a comprehensive compensation "clawback" policy.

The Settlement confers a substantial benefit upon Abaxis and its shareholders.  In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed Settlement should be provided to Abaxis shareholders and a hearing be scheduled for final settlement approval.  There is no question that the Settlement is a very favorable resolution of a case of considerable complexity and is eminently fair, reasonable, and adequate.  Accordingly, Plaintiff respectfully requests that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, submitted herewith, which: (a) grants preliminary approval of the Settlement, (b) preliminarily certifies a Class of Abaxis

---

[1] The Individual Defendants are Clinton H. Severson, Alberto R. Santa Ines, Kenneth P. Aron, Vladimir E. Ostoich, Donald P. Wood, Martin V. Mulroy, Richard J. Bastiani, Michael D. Casey, Henk J. Evenhuis, Prithipal Singh, Vernon E. Altman and Ernest S. Tucker.  Together, Plaintiff, the Individual Defendants and Abaxis may be referred to herein as the "Parties".

[2] A true and correct copy of the Stipulation is attached to the Declaration of Eric L. Zagar, submitted herewith, (the "Zagar Decl.") as Exhibit 1.  Unless otherwise defined, all capitalized terms used herein shall have the same meaning as in the Stipulation.

stockholders for purposes of the Settlement, (c) directs that notice be given to Abaxis shareholders, and (d) schedules a hearing at which the Court will consider final approval of the Settlement.

## II. FACTUAL AND PROCEDURAL HISTORY

On October 1, 2012, Plaintiff filed in the Court a Verified Shareholder Class Action and Derivative Complaint (the "Complaint") that asserted class claims on behalf of a class of all persons and entities that held common stock in Abaxis as of the close of business on August 31, 2012, which represents the record date for the stockholders entitled to vote at Abaxis's October 24, 2012 Annual Meeting (excluding the Excluded Persons and the legal representatives, heirs, successors or assigns of any such Excluded Person) (the "Class"), *see* Stipulation at p. 1:16-23, as well as derivative claims on behalf of nominal defendant Abaxis, against the Individual Defendants. The Complaint alleged, *inter alia*, that: (1) the Grantor Defendants violated the terms of the Company's 2005 Plan by granting to the Officer Defendants and other Abaxis employees Restricted Stock Units than could be settled pursuant to the 500,000 share Restricted Stock Limit; and (2) in total, the Board issued 870,179 shares of common stock upon settlement of Restricted Stock Units granted under the 2005 Plan since October 2005 (370,179 shares in excess of the Restricted Stock Limit) and granted a total of 2,045,000 Restricted Stock Units pursuant to the 2005 Plan (1,545,000 more than could be settled in accordance with the Restricted Stock Limit). *See* Stipulation at pp. 1:23-2:5. Also on October 1, 2012, Plaintiff filed a motion for preliminary injunction seeking to enjoin Abaxis' October 24, 2012 annual meeting because the Company's 2012 Proxy contained materially false and misleading statements regarding the proposed Plan Amendment. *See* Stipulation at p. 2:6-10.

On October 23, 2012, the Court granted, in part, Plaintiff's motion for preliminary injunction, enjoining the shareholder vote on the Plan Amendment until the Company made certain additional disclosures in the 2012 Proxy sought by Plaintiff. *See* Stipulation at p. 2:11-13. On October 24, 2012, the Company filed with the SEC supplemental proxy materials containing the additional disclosures required by the Court. *See* Stipulation at p. 2:13-15. Thereafter, on November 8, 2012, the Company reconvened the 2012 Annual Meeting in order to allow

stockholders to vote on the Plan Amendment, which was subsequently approved. *See* Stipulation at p. 2:15-17.

On December 28, 2012, Defendants filed motions to dismiss Plaintiff's Complaint, arguing that Plaintiff, *inter alia*, failed to adequately plead demand futility and failed to state a claim for relief. *See* Stipulation at p. 2:18-20. Defendants' Motions to Dismiss were fully briefed and oral argument was held on May 7, 2013. At the request of the Parties, the Court agreed to defer ruling on the Motions to Dismiss pending the Parties' efforts to reach a settlement of the Action. *See* Stipulation at p. 2:21-23.

Counsel for the Parties engaged in settlement negotiations in or about May 2013 and, following the exchange of numerous proposals and counter-proposals and related negotiations over the course of several months, the Parties eventually reached an agreement in principle to settle the Action on the terms set forth in the Stipulation, which include changes to the Company's corporate governance practices and policies. *See* Stipulation at p. 2:24-28. After the substantive terms of the Settlement were negotiated, the Parties then began negotiating the amount of fees and expenses payable to Plaintiff's Counsel for the benefits conferred as a result of the prosecution and settlement of the Action. *See* Stipulation at pp. 2:28-3:3. On or about December 10, 2013, the Parties entered into a memorandum of understanding (the "MOU") memorializing their agreement in principle to settle the Action. *See* Stipulation at p. 3:3-5. Following additional negotiations among the Parties, the Parties have been unable to agree upon the amount of fees and expenses payable to Plaintiff's Counsel. *See* Stipulation at pp. 3:5-6, 12:26-28. Accordingly, Plaintiff's Counsel intend to apply to the Court for an award of attorneys' fees and expenses. *See* Stipulation pp. 12:28-13:2. The Parties entered into the Stipulation on January 16, 2014.

## III. THE TERMS OF THE SETTLEMENT

The Parties agree that, as a result of the filing, pendency, prosecution and settlement of the Action, Abaxis and/or the Company's Board shall take all necessary steps to adopt the corporate governance measures outlined below in consideration of the Settlement and maintain such

measures for five years from the date of adoption, and that the measures set forth below constitute a benefit to Abaxis and its stockholders:

1. The Compensation Committee Charter shall be revised to require the Compensation Committee on an annual basis to review, with the assistance of outside counsel, Abaxis' equity incentive plans;

2. Prior to the granting of any equity incentive award(s) to executive officers, the Board and/or Compensation Committee shall review, with the assistance of outside counsel, Abaxis' equity incentive plans to ensure compliance therewith;

3. Equity awards to executive officers shall be approved at a meeting of the Compensation Committee or Board, as applicable, and not by unanimous written consent;

4. Abaxis directors shall be required to receive annual education on relevant topics, e.g., administration of the Company's compensation plans, disclosure obligations to stockholders and the Company's NASDAQ listing requirements;

5. The Company's annual proxy statement shall contain a certification from the Compensation Committee and/or the Board, as applicable, that they have reviewed the terms of the Company's equity incentive plans and that all equity awards granted during the prior fiscal year were granted in compliance with the terms of the Company's equity incentive plans;

6. The Board or Compensation Committee shall retain an independent compensation consultant each year;

7. The Compensation Committee Charter shall be revised to require the Compensation Committee to consist of at least three (3) members;

8. The Company's stock plan administrator shall:

    a. Become a member of the National Association of Stock Plan Professionals; and

    b. Attend a minimum of eight (8) hours of training sponsored by the National Association of Stock Plan Professionals per fiscal year for the next five (5) fiscal years;

9. The Company, with the assistance of outside counsel, will conduct an annual training session for the Company's stock plan administrator regarding equity incentive plan administration procedures;

10. The Company will adopt a compensation clawback policy that includes the following provisions, among other things:

    a. If the Company is required to prepare an accounting restatement for any fiscal quarter or year due to the material noncompliance of the Company with any financial reporting requirement, and the Board determines that misconduct contributed to the noncompliance that resulted in the obligation to restate the Company's financial statements, the Board may require (i) in the case of the Company's Chief Executive Officer and Chief Financial

        Officer, that each such individual repay to the Company the compensation listed in paragraphs (i), (ii), and (iii) below, regardless of which officer's misconduct contributed to the noncompliance that resulted in the obligation to restate the Company's financial statements, and (ii) in the case of any other officer whose misconduct contributed to the noncompliance which resulted in the obligation to restate the Company's financial statements, that each such individual repay to the Company the compensation listed in (i), (ii) and (iii) below, in each case as and to the extent permitted by applicable law:

        i.     Up to the full amount of the difference between any bonus compensation received by the officer that was calculated based on the financial statements that were subsequently restated and the lower bonus compensation to which the officer would have been entitled had the financial statements been properly reported;

        ii.    Up to the full amount of any equity incentive grant received by the officer that was determined based on the financial statements that were subsequently restated; and

        iii.   If, after the release of earnings for any period with respect to which financial statements were subsequently restated and prior to the announcement of such restatement, the officer sold any shares of Company common stock acquired pursuant to an option or other award granted after the adoption of this policy under the Company's equity incentive plans, the excess of (i) the actual aggregate sales proceeds from the officer's sale of those shares, over (ii) the aggregate sales proceeds the Affected Officer would have received from the sale of those shares at a price per share determined appropriate by the Board in its discretion to reflect what the Company's common stock price would have been if the restatement had occurred prior to such sales; provided, however, that the aggregate sales proceeds determined by the Board under this clause (1) with respect to shares acquired upon exercise of an option shall not be less than the aggregate exercise price paid for those shares; and

    b.    The Board may seek recoupment from the Officer(s) for the amounts described above from any of the following sources: prior incentive compensation payments; future payments of incentive compensation; cancellation of outstanding equity awards; future equity awards; and direct repayment. To the extent permitted by applicable law, the Company may offset such amount against any compensation or other amounts owed by the Company to the Officer. If an amount repaid to the Company under this Policy will not be fully deductible by the Officer, the Board may, in its discretion, reduce the amount to be repaid by the amount determined by the Board to reasonably take into account the adverse tax consequences of such repayment to the Officer.

## IV. LEGAL STANDARD

"District court review of a class action settlement proposal is a two-step process: preliminary approval and a subsequent final approval after a 'fairness hearing.'" 2 McLaughlin on Class Actions § 6:7 (9th ed. 2012).  The first step requires two findings:  (1) preliminary certification of the settlement class (*see id*.); and (2) "a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Id*.  "For purposes of preliminary approval of class certification and proposed settlement, a district court must evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) (citing Newburg on Class Actions (4th ed. 2002) §11:25).  Similarly, the settlement of a stockholder derivative action should be preliminarily approved where the settlement is "within the range of possible approval[.]" *In re NVIDIA Corp. Deriv. Litig.*, No. 06-6110-SBA-JCS, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (citing *Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995)).  Here, the proposed Class meets the criteria set forth in Fed. R. Civ. P. 23 and the proposed Settlement is within the range of possible judicial approval.  Accordingly, the Settlement should be preliminarily approved.

### A. Class Certification for Settlement Purposes is Proper

As provided in the Stipulation, the Parties agree that the Action should be certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a), 23(b)(1) and 23(b)(2).  The Parties further agree that the settlement Class is to consist of all persons and entities that held common stock in Abaxis as of the close of business on August 31, 2012, which represents the record date for the stockholders entitled to vote at Abaxis's October 24, 2012 Annual Meeting (excluding the Excluded Persons and the legal representatives, heirs, successors or assigns of any such Excluded Person).

Rule 23(a) provides four prerequisites that must be satisfied for class certification:  (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class. *Wright*, 259 F.R.D. at 471. In addition, Rule 23(b) "requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id*. at 471-72. Here, the elements of Rule 23(a) and (b) are readily satisfied.

**1. <u>Numerosity</u>**

"The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable." *Wright*, 259 F.R.D. at 472. Here, the proposed Class consists of all Abaxis stockholders as of the close of business on August 31, 2012, excluding Defendants and certain of their affiliates. Abaxis' common stock trades on the NASDAQ under the symbol "ABAX". According to the 2012 Proxy, there were 21,932,263 shares of Abaxis common stock outstanding as of August 31, 2012 held by hundreds, if not thousands, of beneficial holders throughout the United States. Accordingly, the numerosity requirement is satisfied. *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 634-35 (S.D. Cal. 2008) (numerosity prong satisfied where millions of shares of company stock were traded on national exchange and stockholders were spread geographically throughout the United States).

**2. <u>Commonality</u>**

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). Here, "[t]he commonality requirement is satisfied because the issue of whether [Abaxis] issued false and misleading proxy statements is common to all class members." *In re Apple Inc. Sec. Litig.*, No. 06-5208-JF-HRL, 2011 WL 1877988, at *2 (N.D. Cal. May 17, 2011).

**3. <u>Typicality</u>**

The typicality prerequisite is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ .P. 23(a)(3). Here, the typicality requirement is met because "the claims of [Plaintiff] are identical to … those of other class

members" in that they "arise from [Abaxis]'s allegedly false and misleading proxy statement[]." *In re Apple*, 2011 WL 1877988, at *2.

**4. Adequacy**

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, there are no conflicts between Plaintiff and its counsel and absent Class members, as Plaintiff will not receive any benefit from the Settlement not shared by other Class members. Furthermore, Plaintiff's Counsel vigorously prosecuted the Action by, *inter alia*, obtaining the Injunction and opposing Defendants' Motions to Dismiss the Complaint. Accordingly, the adequacy requirement is satisfied.

**5. Rule 23(b)**

In addition to satisfying the four prerequisites of Rule 23(a), a class action must meet one of the criteria set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Here, Plaintiff alleged that the Individual Defendants breached their fiduciary duties to the Class and disseminated materially false and misleading statements concerning the Plan Amendment. Under these circumstances, class certification is appropriate under Rule 23(b)(1) and (b)(2) because all members of the stockholder class are situated precisely similarly with respect to every issue of liability, to litigate the matters separately would subject the defendant to the risk of different standards of conduct with respect to the same action, and Plaintiff sought injunctive relief in the Action on behalf of the entire Class. *See, e.g., TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-59 (2d Cir. 1982) (affirming certification of class action pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B) and (b)(2) where plaintiff alleged, *inter alia*, that defendants disseminated materially false and misleading information statement and breached fiduciary duties to stockholders); *Aguilar v. Melkonian Enters., Inc.*, No. 05-0032-OWW-LJO, 2007 WL 201180, at *4-5 (E.D. Cal. Jan. 24, 2007) (class certified under Fed. R. Civ. P. 23(b)(1) and (b)(2) for breach of fiduciary duty claims). *See also Nottingham Partners v. Dana*, 564 A.2d 1089, 1094-97 (Del. 1989) (certification under (b)(2)

proper where "complaint alleged breaches of fiduciary duty and disclosure violations"); *In re Cox Radio, Inc. S'holders Litig.*, No. 4461-VCP, 2010 WL 1806616, at *8 (Del. Ch. May 6, 2010) ("actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2).").

**B. The Settlement Should be Preliminarily Approved**

"There is an overriding public interest in settling and quieting litigation." *MWS Wire Indus., Inc. v. California Fine Wire Co., Inc.*, 797 F.2d 799, 802 (9th Cir. 1986). Thus, "[a] preliminary fairness assessment is not to be turned into a trial or rehearsal for trial on the merits, as it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." 2 McLaughlin on Class Actions § 6:7 (9th ed. 2012) (citations and quotations omitted). Instead, preliminary approval of a settlement and notice to the proposed class is appropriate "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval …." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (1985)). *See also In re NVIDIA*, 2008 WL 5382544, at *2 (preliminary approval appropriate where proposed settlement is fair, reasonable, and adequate" and "not the product of fraud or overreaching by, or collusion between, the negotiating parties."). Here, this standard is easily met, and the Court should preliminarily approve the Settlement.

**1. <u>The Settlement is not a product of collusion</u>**

The Settlement was negotiated by counsel for Plaintiff and Defendants over the course of many months. *See* Stipulation at pp. 2:24-3:6. Plaintiff's Counsel are experienced litigators with substantial experience litigating class action and stockholder derivative actions. *See* Zagar Decl., Exhs. 2-3. Furthermore, counsel for Defendants — Gibson, Dunn & Crutcher, LLP — are some of the most respected litigators in the world. *See, e.g.,* Zagar Decl., Exh. 4. These experienced counsel did not rush to settle the Action. Rather, the Parties did not reach an agreement to settle

the Action until after the Court granted Plaintiff's motion for preliminary injunction, the Parties fully briefed Defendants' Motions to Dismiss, the Parties submitted supplemental briefing on whether Plaintiff's claims regarding the Excess RSUs had been mooted and the Court heard oral argument on Defendants' Motions to Dismiss. Accordingly, counsel were able to assess the strengths and weaknesses of their claims and defenses. *See In re Tableware*, 484 F. Supp. 2d at 1080 (settlement preliminarily approved where "[e]xperienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time . . . .").

**2. <u>The Settlement falls within the range of possible approval and has no obvious deficiencies</u>**

Here, the proposed Settlement calls for the implementation of numerous corporate governance reforms that specifically improve the manner in which Abaxis grants equity awards to its employees and directors. *See* Section III, *supra*. The relief obtained as a result of the settlement of the Action is comparable to the relief obtained in settlements of other stockholder actions alleging breaches of fiduciary duty in connection with the compensation practices of public corporations. For instance, in *In re Rambus Inc. Deriv. Litig.*, No. 06-3513-JF-HRL, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009), the court approved a settlement providing for, among other things, revisions to the compensation committee's charter to require annual review of equity compensation awards and the retention of compensation consultants to assist the compensation committee with the granting of equity awards. *See In re Rambus Inc. Deriv. Litig.*, No. 06-3513-JF-HRL, Stipulation of Settlement at 10-13 (N.D. Cal. Oct. 29, 2008) (Zagar Decl., Exh. 5). *Compare with* Sections III.1 & 6, *supra*. Similarly, in *Bacas v. Way*, No. 07-cv-0456-MH (S.D. Tex.), the court approved a settlement that provided for, among other things, requiring all equity grants to be made only at a meeting of the full board of directors or compensation committee. *See Bacas v. Way*, No. 07-cv-0456, Stipulation of Settlement at 7-10 (S.D. Tex. Jan. 9, 2008) and Order and Final Judgment (S.D. Tex. Apr. 1, 2008) (Zagar Decl., Exh. 6). *Compare with* Section III.3, *supra*. Numerous other settlements further demonstrate that the relief obtained by Plaintiff in

the Settlement provides a substantial benefit, and that the Settlement falls within the range of possible approval. *See*, *e.g.*, *In re NVIDIA*, 2008 WL 5382544, at *1 (preliminarily approving settlement where relief included "agreement to enact and/or continue numerous corporate governance policies and changes that will strengthen NVIDIA's internal controls and the independence and accountability of its board of directors"); *City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10, 2008) (approving settlement implementing corporate governance practices to address improper stock option granting practices) (Zagar Decl., Exh. 7). Accordingly, the Settlement should be preliminarily approved.

In addition, as a result of the commencement and litigation of the Action, Plaintiff obtained the Injunction and additional disclosures in connection with the 2012 Annual Meeting. Moreover, at the time the Parties determined to settle the Action, Defendants had moved to dismiss Plaintiff's Complaint, arguing, *inter alia*, that they mooted Plaintiff's damages claims by ratifying the Excess RSUs. Thus, because additional litigation would likely be extensive and protracted, and Plaintiff faced the real risk that it would not obtain any greater benefit through litigation, the Settlement represents an excellent result for the Class and Abaxis and warrants preliminary approval.

### 3. No Abaxis stockholder will receive preferential treatment

No Abaxis stockholder will receive preferential treatment in connection with the Settlement. Plaintiff has not received, nor will it receive, any payment for its role in connection with the prosecution and settlement of the Action. *See* Zagar Decl., ¶ 11. Thus, all Class members will benefit equally from the Settlement.

## V. THE NOTICE IS ADEQUATE

"For any class certified under Rule 23(b)(1) or (b)(2), the court ***may*** direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A) (emphasis added). Similarly, the Court has discretion to direct notice to stockholders in connection with the settlement of stockholder derivative litigation. *See* Fed. R. Civ. P. 23.1(c). Here, the Notice of the Settlement will be distributed to all Abaxis stockholders by filing the Notice with the SEC. Such dissemination of

notice of a proposed settlement has been deemed adequate. *See, e.g., In re Sanmina-SCI Corp. Deriv. Litig.*, No. 06-03783-JF, Order (N.D. Cal. Feb. 27, 2009) (approving notice via press release and filing of Form 8-K) (Zagar Decl., Exh. 8). Furthermore, the Notice describes, *inter alia*: (1) the nature of the Action: (2) the definition of the Class; (3) that Class members may enter an appearance in the Action and, if desired, object to the Settlement; and (4) the time and manner for any such objection. *See* Fed. R. Civ. P. 23(c)(2)(B) (discussing requirements for content of mandatory notice for class certified pursuant to Fed. R. Civ. P. 23(b)(3), which are more onerous than requirements for elective notice pursuant to Rules 23(b)(1) and (2)). Accordingly, the Notice adequately protects the interests of absent Class members and should be approved.

## VI. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the parties request that the Court establish a date by which notice of the Settlement will be distributed to Abaxis stockholders, a date by which Abaxis stockholders may comment on the Settlement, and a date and time for a Settlement Hearing. As set forth in the Stipulation, Preliminary Order and Notice submitted herewith, the parties propose the following:

| | |
|---|---|
| Abaxis files the Notice with the SEC. | Ten (10) calendar days after entry of the Preliminary Approval Order. |
| Plaintiff files motion in support of final approval of Settlement. | Thirty five (35) calendar days prior to Settlement Hearing |
| Defendants file any opposition to Plaintiff's motion in support of final approval of Settlement; Stockholder objections to Settlement due. | Twenty one (21) calendar days prior to Settlement Hearing. |
| Defendants file proof of publication of Notice. | Twenty one (21) calendar days prior to Settlement Hearing. |
| Plaintiff's Reply in support of final approval of Settlement. | Seven (7) calendar days prior to Settlement Hearing. |
| Settlement Hearing. | At least sixty (60) calendar days after entry of the Preliminary Approval Order. |

Case4:12-cv-05086-YGR Document98 Filed01/17/14 Page18 of 18

## VII. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully submits that the Court should enter the Preliminary Order in the form submitted herewith.

DATED: January 17, 2014

**KESSLER TOPAZ MELTZER & CHECK, LLP**

/s/ Eric Zagar
Eric L. Zagar (250519)
James H. Miller
Matthew A. Goldstein
280 King of Prussia Road
Radnor, Pennsylvania 19087
Phone: (610) 667-7706
Fax: (267) 948-2512
ezagar@ktmc.com
jmiller@ktmc.com
mgoldstein@ktmc.com

-and-

Eli R. Greenstein (217945)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Phone: (415) 400-3000
Fax: (415) 400-3001
egreenstein@ktmc.com

**SAXENA WHITE, P.A.**
Joseph E. White, III
Jonathan M. Stein
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Phone: (561) 394-3399
Fax: (561) 394-3382
jwhite@saxenawhite.com
jstein@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Plaintiff*

NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF - 13 -
CASE NO. 12-CV-05086-YGR