# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HARRY A. BACAS and GAIL HALGREN, Derivatively on Behalf of HCC INSURANCE HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN L. WAY et al., <br><br> Defendants <br><br> –and– <br><br> HCC INSURANCE HOLDINGS, INC., a Delaware Corporation, <br><br> Nominal Defendant. | § § § § § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. 4:07-CV-00456 <br> JUDGE MELINDA HARMON <br><br> (CONSOLIDATED) |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated as of December 31, 2007 (the "Stipulation") is submitted pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for the Southern District of Texas, Houston Division (the "Court"), this Stipulation is entered into among Plaintiffs (the "Derivative Plaintiffs") in the above-captioned action (the "Derivative Litigation"), nominal defendant HCC Insurance Holdings, Inc. ("HCC" or the "Company") and certain of HCC's current and former directors and officers who have been named as defendants in this action, including Frank J. Bramanti, Marvin P. Bush, Patrick B. Collins, James R. Crane, J. Robert Dickerson, Walter M. Duer, Edward H. Ellis, Jr., James C. Flagg, Edwin H. Frank, III, Allan W. Fulkerson, Craig J. Kelbel, Stephen J. Lockwood, John N. Molbeck, Jr., Farid F. Nagji, Michael A.F. Roberts, Michael J. Schell, Peter B. Smith, Jr., Benjamin D. Wilcox, Hugh T. Wilson,

70147138.6

officers of HCC believe that the proposed Settlement is in the best interests of HCC and HCC's shareholders;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, subject to approval of the Court, by and among the Parties hereto:

### Settlement Terms

1. HCC agrees to amend its bylaws to provide and maintain, for a period of four years from the Effective Date (as defined below), that the position of Chairman of the Board shall not be held by the Company's Chief Executive Officer, and shall be held by an independent director.

2. HCC agrees that, for a period of four years from the Effective Date and for as long as any applicable listing requirements or rules of the New York Stock Exchange shall require it of HCC, each standing committee of the Board shall have a written charter, made available to the public on the Company's website, which requires that the committee meet no fewer than four times per year; provided, however, that an Executive Committee, if one is constituted, shall not be required to meet a specific number of times per year.

3. The Parties agree and acknowledge that current Chairman of the Board J. Robert Dickerson satisfies the agreed requirements provided in paragraph 1, above.

4. For a period of four years from the Effective Date, HCC further agrees that at least two-thirds of its Board shall be constituted of independent directors, who shall, except as provided in paragraph 5, below, meet the following criteria:

   a. No independent director shall have been employed by the Company or its subsidiaries or affiliates (which shall include any individual or business entity that owns as least 5% of the securities of the Company having ordinary voting power) within the last five years;

   b. No independent director shall have received, during calendar years 2004-2007, remuneration, directly or indirectly, as a result of service as, or compensation paid

to an entity affiliated with the individual that serves as, (i) an advisor, consultant, or legal counsel to the Company or to a member of the Company's senior management; or (ii) a significant customer or supplier of the Company;

c. No independent director shall have a personal services contract with the Company, or any member of the Company's senior management;

d. No independent director shall be affiliated with a not-for-profit entity that receives significant contributions from the Company;

e. No independent director, during calendar years 2004-2007, shall have had any business relationship with the Company for which the Company has been required to make disclosure under Item 404(a) of Regulation S-K (Transactions with Related Persons) of the Securities and Exchange Commission ("SEC");

f. No independent director shall be employed by a public company at which an executive officer of the Company serves as a director;

g. No independent director shall have had any relationship described in paragraphs (a)-(f), above, with any affiliate of the Company;

h. No independent director shall be a member of the immediate family of any person who fails to satisfy the requirements of (a)-(g), above; and

i. A director shall be deemed to have received remuneration, and not be independent, if remuneration, other than de minimis remuneration or remuneration as a director (including remuneration provided to a non-executive Chairman of the Board, Committee Chairman, or Lead Director), was paid by the Company, its subsidiaries, or affiliates, to any entity in which the director has a beneficial ownership interest of five percent or more, or to an entity by which the director is employed or self-employed other than as a director. Remuneration shall be considered "de minimis remuneration" for purposes of this sub-paragraph if such remuneration is $60,000 or less in any calendar year or, if the remuneration is paid to an entity rather than directly to the director, (i) the remuneration does not exceed, in the calendar year, the lesser of $1 million or 5% of the gross revenues of the entity; and (ii) the remuneration does not directly result in a material increase in the compensation received by the director from that entity.

5. Notwithstanding the provisions of paragraph 4, above, the following shall not be a basis upon which a director may be deemed to lack independence: (a) payments disclosed in the Company's proxy (filed on or about April 13, 2007) with respect to current director Allan W. Fulkerson's indirect ownership interest in and directorship of an investment manager, which entity received $0.4 million in fees in connection with certain HCC strategic investments, and (b) payments

-8-

made to a director as a part of any pension plan. The Parties acknowledge that, with the Company's adoption of a retirement policy for directors, Mr. Fulkerson does not intend to seek reelection to the Company's Board of Directors beyond the regularly scheduled election in 2009.

6. The Parties have agreed to the following procedure to fill the currently existing vacancy on HCC's Board of Directors:

    a. The Nominating and Corporate Governance Committee shall establish an objective set of criteria to be utilized in conducting the search for a new director described herein;

    b. HCC will engage a nationally recognized search firm experienced in director searches, which will propose at least three qualified and experienced candidates to the Nominating and Corporate Governance Committee;

    c. The Nominating and Corporate Governance Committee shall interview the candidates and conduct background checks, and recommend at least one candidate to the Board of Directors;

    d. If the Board of Directors, in its business judgment, agrees that one or more of the candidates presented to it by the Nominating and Corporate Governance Committee is satisfactory, then the Board will select one of those candidates and either (i) nominate the candidate for election to the Board or, (ii) if no shareholders' meeting is scheduled in the next 90 days, appoint the candidate to fill the Board vacancy until such meeting is held and the candidate can be nominated for election by the shareholders.

7. For a period of four years from the Effective Date, the Company agrees to the establishment of a formal policy requiring independent directors to meet in executive session at each regularly scheduled, in-person meeting of the Board of Directors.

8. For a period of four years from the Effective Date, the Company agrees to implement the following procedures with respect to its equity incentive plans:

    a. HCC will submit a new equity incentive plan for shareholder approval at the next annual meeting of shareholders;

    b. All new plans shall clearly define the exercise price, the grant date and the fair market value of stock. In no event shall the exercise price or value of an award be

determined by reference to the fair market value of the Company's stock on a day other than the grant date of the award. If the Company continues to be listed on the New York Stock Exchange, the fair market value of the Company's stock on a grant date shall be the closing price for a share of the Company's common stock on such day as reported on the New York Stock Exchange. All existing plans shall be administered consistently with these requirements;

c. The new stock option plan provided for in paragraph (a), above, shall include the following language or, in sum and substance, include the following provisions: (i) "The exercise price for each option grant shall be at least 100 percent of the closing market price on the date of grant"; and (ii) "The date of grant of an option shall, for all purposes, be the date on which the Board or Compensation Committee makes the determination granting such option. Notice of the determination shall be given to each employee or consultant to whom an option is so granted no more than two weeks after the date of such grant. Determination shall be defined as including at a minimum, the number of options granted to each employee and/or consultant and the terms of such options";

d. All plans shall identify who is responsible for ensuring compliance with applicable laws and regulations by option grantees, and shall provide effective monitoring mechanisms to ensure that such laws, and the plans, are followed;

e. Authority to grant stock option awards shall be limited to the full Board or a properly constituted Compensation Committee comprised of independent directors;

f. All grants shall be made only at a meeting of the Company's Board or Compensation Committee and not by unanimous written consent.

g. Corporate counsel shall attend any and all meetings where options are granted and shall promptly prepare minutes of the meeting; and

h. The body authorized to grant stock options shall be specified in the Compensation Committee charter and any current and/or subsequent equity incentive plan, whether or not subject to shareholder approval.

9. Defendants acknowledge that the pending Derivative Litigation was a substantial cause of the Company's decisions to adopt the remedial measures and changes set forth above.

### Releases

10. Upon the Effective Date of this Stipulation, Derivative Plaintiffs in the Derivative Litigation, individually and derivatively on behalf of HCC and its shareholders, and Derivative Plaintiffs' respective present or former officers, directors, partners, principals, employees, members,

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRY A. BACAS and GAIL HALGREN, Derivatively on Behalf of HCC INSURANCE HOLDINGS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN L. WAY et al.,<br><br>Defendants<br><br>-- and --<br><br>HCC INSURANCE HOLDINGS, INC., a Delaware Corporation,<br><br>Nominal Defendant. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:07-CV-00456<br>JUDGE MELINDA HARMON |

## ORDER AND FINAL JUDGMENT

On April 1, 2008, the Court held a final settlement hearing, as noticed, to determine (i) whether the dismissal of the above-captioned Derivative Litigation pursuant to the proposed Settlement, as set forth in a Stipulation of Settlement dated as of December 31, 2007 (the "Stipulation"), should be approved by the Court, (ii) whether final judgment should be entered in the Derivative Litigation, (iii) whether the Fee Award should be approved, and (iv) such other matters as may be necessary or proper in the circumstances. The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing substantially in the form approved by the Court was mailed to all persons or entities reasonably identifiable who were current record holders and beneficial owners of common stock of HCC as of December 28, 2007; and the Court having considered the fairness and reasonableness of the

70159135.6

Fee Award; and all capitalized terms used herein having the meaning as set forth and defined in the Stipulation;

    IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    Notice of the pendency of the Derivative Litigation and of the proposed Settlement was given to all persons or entities reasonably identifiable who were current record holders and beneficial owners of common stock of HCC Insurance Holdings, Inc. ("HCC") as of December 28, 2007. The form and method of notice of the pendency of the Derivative Litigation and of the terms and conditions of the proposed Settlement met the requirements of Fed. R. Civ. P. 23.1 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

2.    The Court finds that the Stipulation and the terms of the Settlement set forth therein are fair, reasonable and in the best interest of HCC and its current shareholders. The Settlement is hereby approved, and the parties are hereby directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

3.    The Derivative Litigation is hereby dismissed on the merits and with prejudice, with each party to bear his, her, or its own costs except as detailed in the Stipulation.

4.    Derivative Plaintiffs, individually and derivatively on behalf of HCC and its current shareholders, and Derivative Plaintiffs' respective present or former officers, directors, partners, principals, employees, members, agents, attorneys, insurers, stockholders, financial advisors, accountants, commercial bank lenders, investment bankers, representatives, affiliates, associates, parents, subsidiaries, general and limited partners and partnerships, heirs, executors, administrators, successors and assigns (collectively, the "Releasing Parties"), are hereby deemed to have forever relinquished and released any and all claims, rights or causes of action or

liabilities whatsoever, whether asserted directly, individually, derivatively, or in a representative capacity, whether known or unknown or suspected to exist, and whether based on federal, state or local statutory or common law or any other law, rule or regulation, that have been or could have been asserted in the Derivative Litigation or any amendment thereof on behalf of HCC against the Individual Defendants or nominal defendant HCC, or any of their respective present or former officers, directors, partners, principals, employees, members, agents, attorneys, insurers, stockholders, financial advisors, accountants, commercial bank lenders, investment bankers, representatives, affiliates, associates, parents, subsidiaries, general and limited partners and partnerships, heirs, executors, administrators, successors and assigns (collectively, the "Released Parties"), which arise out of or relate in any way to the transactions, acts, facts, matters or occurrences, representations or omissions alleged, described, set forth, or referred to in the Consolidated Complaint in the Derivative Litigation or any amendment thereof, including but not limited to: claims related to grants or exercises of stock option grants; HCC's historic policies, practices and procedures related to the granting or exercise of stock options; HCC's accounting for stock option grants or exercises; the dating of HCC's stock option grants (including but not limited to allegations of so-called "back-dating," "forward-dating," "spring-loading," "bullet-dodging," or any other options dating practice, procedure or policy); and claims for breach of fiduciary duty, abuse of control, breach of HCC's policies or procedures, waste, mismanagement, gross mismanagement, unjust enrichment, violations of federal or state law, money damages, or other relief related to the historic stock option granting practices (collectively, the "Settled Claims"); *provided*, however, that nothing herein shall constitute a release by HCC of any claim arising out of the rights, remedies, duties or obligations provided for in the Separation Agreements; and provided, further, that nothing set forth herein shall

constitute a release by HCC of any director or officer from the responsibility or requirement, if any, to repay any advance or other payments made by HCC on behalf of such persons, if such shall be required or permitted under HCC's by-laws, Delaware law, or any indemnification agreement or similar agreement between HCC and any such officer or director, and nothing set forth herein shall release any obligation of any Party as set forth in any employment agreement or similar agreement between HCC and such Party (including without limitation any consulting and/or Separation Agreement), nor any obligation of any Party as set forth in any current stock option or similar agreement; and provided, further, that nothing set forth herein shall constitute a release by HCC of any insurer of any claim arising out of the rights, remedies, duties or obligations provided for in any insurance policy or agreement.

5.   Defendants Frank J. Bramanti, Marvin P. Bush, Patrick B. Collins, James R. Crane, J. Robert Dickerson, Walter M. Duer, Edward H. Ellis, Jr., James C. Flagg, Edwin H. Frank, III, Allan W. Fulkerson, Craig J. Kelbel, Stephen J. Lockwood, John N. Molbeck, Jr., Farid F. Nagji, Michael A.F. Roberts, Michael J. Schell, Peter B. Smith, Jr., Benjamin D. Wilcox, Hugh T. Wilson, Stephen L. Way, Christopher L. Martin, and Walter J. Lack (the "Individual Defendants") are deemed to have forever relinquished and released any and all claims, rights or causes of action or liabilities whatsoever, whether asserted directly, individually, or in a representative capacity, whether known or unknown or suspected to exist, and whether based on federal, state or local statutory or common law or any other law, rule or regulation, that have been or could have been asserted against HCC, or any of its partners, attorneys, insurers, stockholders, financial advisors, accountants, commercial bank lenders, investment bankers, affiliates, parents, subsidiaries, general and limited partners and partnerships, successors and assigns, which arise out of or relate in any way to the Settled

Claims; ***provided***, however, that nothing herein shall constitute a release by an Individual Defendant of any claim arising out of the rights, remedies, duties or obligations provided for in the Separation Agreements; and provided, further, that nothing set forth herein shall constitute a release by an Individual Defendant of HCC and/or its insurers from the responsibility or requirement, if any, to indemnify or insure such persons, if such shall be required or permitted under HCC's by-laws, Delaware law, or any indemnification agreement, insurance policy, or similar agreement between HCC, its insurers, and/or any such Individual Defendant, and nothing set forth herein shall release any obligation of any Party as set forth in any employment agreement or similar agreement between HCC and such Individual Defendant (including without limitation any consulting and/or Separation Agreement), nor any obligation of any Party as set forth in any current stock option or similar agreement.

6. Defendants are deemed to have forever relinquished and released any and all claims, rights or causes of action or liabilities whatsoever, whether asserted directly, individually, or in a representative capacity, whether known or unknown or suspected to exist, and whether based on federal, state or local statutory or common law or any other law, rule or regulation, that have been or could have been asserted in the Derivative Litigation or any amendment thereof against Plaintiffs or Plaintiffs' counsel related to the Settled Claims or based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Derivative Litigation.

6. In the event that the Settlement of the Derivative Litigation does not become effective as set forth in paragraph 20 of the Stipulation for any reason, then unless waived, without the need for any further action by any party thereto or by the Court, the Stipulation and this Order and Final Judgment shall become null and void and no further force or effect, and

shall not be used or referred to for any purpose whatsoever. In that event, the Stipulation, this Order and Final Judgment, and all negotiations and proceedings relating thereto shall be withdrawn without prejudice as to the rights of all parties thereto, who shall be restored to their respective positions existing prior to the execution of the Stipulation and this Order and Final Judgment.

7. The Court hereby approves the Fee Award in the amount of $3,000,000 in accordance with the Stipulation and finds that such amount is reasonable.

8. All other relief not expressly granted in this Order and Final Judgment is denied.

9. Without in any way affecting the finality of this Order and Final Judgment, this Court shall retain continuing jurisdiction over the Derivative Litigation and the parties to the Stipulation to enter any further orders as may be necessary to effectuate the Stipulation, the Settlement provided for therein and the provisions of this Order and Final Judgment.

SO ORDERED.

Signed this 1st day of April, 2008.

_____
THE HONORABLE MELINDA HARMON
UNITED STATES DISTRICT JUDGE