**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Eli R. Greenstein (217945)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Phone: (415) 400-3000
Fax: (415) 400-3001
egreenstein@ktmc.com

-and-

Eric L. Zagar (250519)
James H. Miller
Matthew A. Goldstein
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Facsimile: (267) 948-2512
ezagar@ktmc.com
jmiller@ktmc.com
mgoldstein@ktmc.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ST. LOUIS POLICE RETIREMENT SYSTEM, On Behalf Of Itself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant ABAXIS, INC., | **CASE NO. 12-CV-05086-YGR** |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| CLINTON H. SEVERSON, ALBERTO R. SANTA INES, KENNETH P. ARON, VLADIMIR E. OSTOICH, DONALD P. WOOD, MARTIN V. MULROY, RICHARD J. BASTIANI, MICHAEL D. CASEY, HENK J. EVENHUIS, PRITHIPAL SINGH, VERNON E. ALTMAN, AND ERNEST S. TUCKER, | |
| Defendants, | |
| and | |
| ABAXIS, INC. | |
| Nominal Defendant. | |

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on June 17, 2014, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiff St. Louis Police Retirement System (on behalf of itself and all others similarly situated and derivatively on behalf of nominal defendant Abaxis, Inc.), will move the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, CA 94612, to grant final approval of the proposed settlement in the action styled, *St. Louis Police Retirement System v. Severson*, *et al.*, Case No. 4:12-cv-05086-YGR (the "Action"), on the terms set forth in the Stipulation of Settlement dated January 16, 2014 ("Stipulation"), which was previously filed with the Court.  Dkt. No. 98-2.  The settlement resolves the class and derivative claims pending in this Action.

The Motion is based on the following Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement, the Declaration of Eric L. Zagar and Joseph E. White, III in support thereof, the Stipulation, and such additional evidence or argument as may be required by the Court.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     THE LITIGATION ......................................................................................... 2

      A.     Background of the Action ................................................................... 2

      B.     Commencement of the Action ............................................................ 3

      C.     Motion for Preliminary Injunction and Motions to Dismiss .................... 3

      D.     Settlement Negotiations ..................................................................... 4

III.    THE TERMS OF THE SETTLEMENT ....................................................... 5

IV.     THE CLASS SHOULD BE CERTIFIED .................................................... 7

      A.     Numerosity ........................................................................................ 8

      B.     Commonality ..................................................................................... 8

      C.     Typicality .......................................................................................... 9

      D.     Adequacy .......................................................................................... 9

      E.     Rule 23(b) ......................................................................................... 9

      F.     The Settlement Notice Was Adequate ............................................... 10

V.      THE STANDARDS FOR JUDICIAL APPROVAL OF A SETTLEMENT ...................... 11

VI.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND
      SHOULD BE APPROVED ........................................................................... 12

      A.     The Strength of Plaintiff's Case and the Risk of Continued Litigation ................. 13

      B.     The Expense, Complexity and Likely Duration of Further Litigation .................... 14

      C.     The Terms of the Settlement ............................................................. 16

      D.     The Extent of Discovery Completed and the State of Proceedings ................ 18

      E.     The Experience and Views of Counsel ............................................... 19

      F.     The Reaction of Class Members to the Settlement .............................. 19

VII.    CONCLUSION .............................................................................................. 20

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

CASES

4

*Aguilar v. Melkonian Enters., Inc.,*
   No. 05-0032, 2007 WL 201180 (E.D. Cal. Jan. 24, 2007) ................................... 10

5

6

*Bacas v. Way,*
   No. 07-cv-0456-MH, Order and Final Judgment (S.D. Tex. Apr. 1, 2008)........................... 17

7

8

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 18

9

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................. 19

10

*Churchill Village v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004).......................................................... 12, 20

11

12

*City of Pontiac Gen. Employees' Ret. Sys. v. Langone,*
   No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton
   County, Ga. June 10, 2008)........................................................ 17

13

14

*Clark v. Ecolab Inc.,*
   No. 07- 8623, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................. 12

15

16

*Class Plaintiffs v. City of Seattle,*
   355 F.2d 1268 (9th Cir. 1992)....................................................... 11

17

18

*Cohen v. Beneficial Ind. Loan Corp.,*
   337 U.S. 541 (1949) ................................................................. 15

19

*Cohn v. Nelson,*
   375 F. Supp. 2d 844 (E.D. Mo. 2005)................................................. 14

20

21

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ..................... 12

22

*Fletcher v. A. J. Indus., Inc.,*
   266 Cal. App. 2d 313 (Cal. App. 1st Dist. 1968) ................................... 16

23

24

*Garner v. State Farm Mut. Auto. Ins. Co.,*
   No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................. 10

25

26

*Girsh v. Jespen,*
   521 F.2d 153 (3d Cir. 1975)......................................................... 18

27

28

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...................................................................................... 9

*In re Affymetrix Deriv. Litig.*,
    No. C-06-05353-JW, Order (N.D. Cal. June 30, 2009) ........................................... 17

*In re AOL Time Warner S'holder Deriv. Litig.*,
    No. 02-6302, 2006 WL 2572114 (S.D.N.Y. 2006)............................................ 15, 18

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008).................................. 14

*In re Apple Inc. Sec. Litig.*,
    No. 06-5208, 2011 WL 1877988 (N.D. Cal. May 17, 2011) ...................................... 9

*In re Cox Radio, Inc. S'holders Litig.*,
    No. 4461-VCP, 2010 WL 1806616 (Del. Ch. May 6, 2010) ................................... 10

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 15

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................. 11

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000).................................................................................. 18

*In re Metro. Life Deriv. Litig.*,
    935 F. Supp. 286 (S.D.N.Y. 1996) ........................................................................ 15

*In re NVIDIA Corp. Deriv. Litig.*,
    No. C-06-6110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)............................... 16

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-6110, 2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009).................... 11, 14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 13, 19

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995).................................................................................... 13

*In re Quintus Sec. Litig.*,
    No. 00-4263, 2006 WL 3507936 (N.D. Cal. Dec. 5, 2006) .................................... 11

*In re Rambus Inc. Deriv. Litig.*,
    No. 06-3513-JF-HRL, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)....................... 17

*In re Sanmina-SCI Corp. Deriv. Litig.*,
  Master Case No. C-06-03783-JF, Order (N.D. Cal. May 5, 2009) ...................................... 11

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F.Supp. 525 (E.D. Pa. 1990) ........................................................................... 14

*In re Wireless Facilities, Inc. Sec. Litig.*,
  253 F.R.D. 630 (S.D. Cal. 2008) ............................................................................. 8

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 593 (1970) ...................................................... 16

*Nottingham Partners v. Dana*,
  564 A.2d 1089 (Del. 1989) .................................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ......................................................... 12, 14, 18, 19

*Ryan v. Gifford*,
  No. 2213-CC, 2009 WL 18143 (Del. Ch. Jan. 2, 2009) .......................................... 17

*TBK Partners, Ltd. v. Western Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) .................................................................................. 10

*Velez v. Novartis Pharm.*,
  No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........................... 16

*Wright v. Linkus Enterprises, Inc.*,
  259 F.R.D. 468 (E.D. Cal. 2009) ............................................................................. 8

*Zerkle v. Cleveland-Cliffs Iron Co.*,
  52 F.R.D. 151 (S.D.N.Y. 1971) .............................................................................. 14

**STATUTES**

California Corporations Code Section 309 ................................................................ 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1)-(4) ................................................................................... 8

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 8

Fed. R. Civ .P. 23(a)(3) ........................................................................................ 9

Fed. R. Civ. P. 23(b) ............................................................................................ 9

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 11

Fed. R. Civ. P. 23.1(c) ........................................................................................ 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The settlement of the above-captioned action (the "Settlement") should be approved as fair, reasonable and adequate because the Settlement provides a substantial benefit for Abaxis, Inc. ("Abaxis" or the "Company") and its stockholders.  Indeed, as a result of the pendency, prosecution and Settlement of the litigation, and in addition to making additional disclosures in connection with its 2012 annual meeting of stockholders pursuant to the preliminary injunction issued by the Court on October 23, 2012, Abaxis has adopted (or will adopt) significant corporate governance measures that: (i) directly address Plaintiff's allegations of improper equity compensation practices; (ii) are designed to preclude the recurrence of the wrongdoing alleged in the above-captioned action (the "Action"); and (iii) provide for additional reforms to Abaxis's executive compensation practices through, among other things, the adoption of a comprehensive compensation "clawback" policy. Multiple courts have found that settlements resulting in the adoption of similar corporate governance measures constitute a substantial benefit and should be approved.  The Court should do the same here.

Plaintiff St. Louis Police Retirement System ("Plaintiff") has satisfied the applicable requirements of Rules 23 and 23.1 of the Federal Rules of Civil Procedure and Ninth Circuit precedent with regard to settlement of stockholder litigation.  As demonstrated below, with respect to Plaintiff's claims on behalf of the proposed Settlement class of Abaxis stockholders (the "Class"), the Class meets the numerosity, commonality, typicality and adequacy requirements of Fed. R. Civ. P. 23(a), and certification of a class is proper under Fed. R. Civ. P. 23(b)(1) and (b)(2). Furthermore, notice of the proposed Settlement was disseminated to Abaxis stockholders as directed by the Court and in compliance with Fed. R. Civ. P. 23(c) and 23.1(c).  Lastly, the balancing of relevant Ninth Circuit settlement factors applicable to both Plaintiff's class and derivative claims — including the benefit obtained, the difficulty, risk and complexity of continued litigation and the fact that to date no Abaxis stockholder has served an objection to the Settlement

— demonstrates that the Settlement is fair, reasonable and adequate to Abaxis and its stockholders, and should therefore be approved.

## II.      THE LITIGATION[1]

### A.      Background of the Action

Abaxis is a California corporation with headquarters in Union City, California.  Prior to the commencement of this Action, Abaxis granted equity compensation awards to its employees and directors pursuant to the Company's 2005 Equity Incentive Plan (the "2005 Plan").  Among the equity awards granted pursuant to the 2005 Plan were restricted stock units ("Restricted Stock Units" or "RSUs").  During the relevant period, the 2005 Plan, originally approved by stockholders in October 2005 and subsequently amended by the Company and approved by stockholders in October 2008 and again in October 2010, contained a provision that no more than 500,000 shares of Company common stock may be issued under the 2005 Plan upon exercise or settlement of "full value awards," which includes Restricted Stock Units (the "Restricted Stock Limit").

During fiscal years 2007-2013, the Grantor Defendants[2] granted to the Officer Defendants[3] 960,000 Restricted Stock Units, nearly double the number that could be settled in accordance with the Restricted Stock Limit.  In total, since fiscal year 2007, the Board has granted a total of 2,045,000 Restricted Stock Units, *i.e.*, more than four times the number that could be settled in accordance with the Restricted Stock Limit.  As of August 31, 2012, awards consisting of Restricted Stock Units covering an aggregate of 1,119,000 shares of common stock were outstanding under the 2005 Plan.

---

[1] Unless otherwise cited, support for the statements made herein can be found in the Declaration of Eric L. Zagar and Joseph E. White, III, in Support of Plaintiff's Motion for Final Approval of Settlement and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Declaration"), Plaintiff's Verified Shareholder Class Action and Derivative Complaint (the "Complaint") and the Stipulation of Settlement dated January 16, 2014 (the "Stipulation") attached as Exhibit A to the Declaration.

[2] The term "Grantor Defendants" refers to Clinton H. Severson ("Severson), Richard J. Bastiani ("Bastiani"), Michael D. Casey ("Casey"), Henk J. Evenhuis ("Evenhuis"), Prithipal Singh ("Singh") and Ernest S. Tucker ("Tucker").

[3] The term "Officer Defendants" refers to Severson, Alberto R. Santa Ines ("Santa Ines"), Kenneth P. Aron ("Aron"), Vladimir E. Ostoich ("Ostoich"), Donald P. Wood ("Wood") and Martin V. Mulroy ("Mulroy").

In a Form 8-K filed with the United States Securities and Exchange Commission ("SEC") on August 28, 2012 (the "August 28, 2012 8-K"), the Company stated that it received a letter from the staff of the Listing Qualifications Office of the NASDAQ Stock Market ("NASDAQ") informing the Company that it had failed to comply with Listing Rule 5635(c), which requires listed companies to obtain stockholder approval for material amendments to an equity compensation plan. Specifically, the Company admitted that it "exceeded the full value award limit" because it purportedly believed that "such limit applied to each 500,000-share increase to the overall share reserve increase approved by stockholders in 2005, 2008 and 2010." According to the August 28, 2012 8-K, as of August 28, 2012, the Company had issued 870,179 shares of Common Stock upon settlement of Restricted Stock Units granted under the 2005 Plan since October 2005, some 370,179 units in excess of the Restricted Stock Limit.

Thereafter, on September 17, 2012, the Company filed with the SEC a Form DEF14A (the "2012 Proxy") setting the Company's annual meeting for October 24, 2012 (the "Annual Meeting") and soliciting stockholder votes in support of, among other things, approval of proposed amendments to the 2005 Plan to eliminate the Restricted Stock Limit (the "Plan Amendment").

**B.       Commencement of the Action**

On October 1, 2012, Plaintiff commenced the Action by filing in the Court its Verified Shareholder Class Action and Derivative Complaint (the "Complaint"). The Complaint alleged, *inter alia*, that: (1) the Grantor Defendants violated the terms of the 2005 Plan by purportedly granting to the Officer Defendants and other Abaxis employees more Restricted Stock Units than could be settled pursuant to the Restricted Stock Limit; and (2) in total, the Abaxis board of directors (the "Board") issued 870,179 shares of common stock upon settlement of Restricted Stock Units granted under the 2005 Plan since October 2005 (370,179 shares in excess of the Restricted Stock Limit) and granted a total of 2,045,000 Restricted Stock Units pursuant to the 2005 Plan.

**C.       Motion for Preliminary Injunction and Motions to Dismiss**

Also on October 1, 2012, Plaintiff filed a motion for preliminary injunction seeking to enjoin Abaxis's October 24, 2012 Annual Meeting because the Company's 2012 Proxy allegedly

contained materially false and misleading statements regarding the proposed Plan Amendment.  On October 23, 2012, the Court granted, in part, Plaintiff's motion for preliminary injunction, enjoining the stockholder vote on the Plan Amendment until the Company made certain additional disclosures in the 2012 Proxy sought by Plaintiff.  On October 24, 2012, the Company filed with the SEC supplemental proxy materials containing the additional disclosures required by the Court.  Thereafter, on November 8, 2012, the Company reconvened the Annual Meeting in order to allow stockholders to vote on the Plan Amendment, which was subsequently approved.

On December 28, 2012, Defendants[4] filed motions to dismiss Plaintiff's derivative claims (the "Motions to Dismiss").[5]  Among other things, Defendants argued that: Plaintiff failed to adequately plead demand futility; no financial harm resulted from the granting of the excess RSUs, thus precluding Plaintiff's claim for damages and unjust enrichment; and, even assuming there are financial damages, Abaxis's charter contains an exculpatory provision that eliminates directors' liability for monetary damages.  Defendants also argued that the Board and the Compensation Committee retroactively ratified the excess RSUs at issue in the Action, thereby mooting Plaintiff's claims.  The Court ordered supplemental briefing on the issue of ratification, and oral argument on Defendants' Motions to Dismiss was held on May 7, 2013.  At the request of the parties in the Action (the "Parties"), the Court agreed to defer ruling on the Motions to Dismiss pending the Parties' efforts to reach a settlement of the Action.

**D.    Settlement Negotiations**

Counsel for the Parties engaged in settlement negotiations in or about May 2013 and attended a mediation with Jed Melnick, a highly respected mediator, on September 20, 2013.  Following the exchange of numerous proposals and counter-proposals, and related negotiations over the course of several months, the Parties eventually reached an agreement in principle to settle

---

[4] The terms "Defendants" or "Individual Defendants" refers to Severson, Santa Ines, Aron, Ostoich, Wood, Mulroy, Bastiani, Casey, Evenhuis, Singh, Vernon E. Altman ("Altman") and Tucker.

[5] Abaxis and defendants Severson, Bastiani, Casey, Evenhuis, Singh and Altman filed one motion to dismiss, and the Officer Defendants filed a separate motion to dismiss.

1    the Action on the terms set forth in the Stipulation, which include changes to the Company's

2    corporate governance practices and policies. *See* Section III, *infra*.

3         On December 10, 2013, the Parties entered into a memorandum of understanding

4    memorializing their agreement in principle to settle the Action. Following additional negotiations

5    concerning the form and substance of the Stipulation and supporting Settlement documents, the

6    Parties executed the Stipulation on January 16, 2014. On January 17, 2014, Plaintiff filed its

7    Motion for Preliminary Approval of Settlement and Memorandum of Law in Support Thereof.

8    Therein, Plaintiff requested that the Court preliminarily approve the terms of the proposed

9    Settlement and approve the form of settlement notice that was to be filed by Abaxis in a Form 8-K

10   with the SEC (the "8-K Notice"). On April 4, 2014, the Parties held a telephonic conference with

11   the Court during which the Court provided comments to the proposed preliminary approval order

12   and 8-K Notice, and requested the Parties to agree upon an additional form of notice that would be

13   disseminated to Abaxis stockholders. Following additional negotiations, the Parties agreed upon a

14   form of settlement notice to be published by Abaxis in a press release (the "Press Release Notice"),

15   which was submitted to the Court on April 11, 2014. The Court preliminarily approved the

16   Settlement on April 15, 2014.

17   **III.**      **THE TERMS OF THE SETTLEMENT**

18         The Parties agree that, as a result of the filing, pendency, prosecution and settlement of the

19   Action, Abaxis and/or the Company's Board shall take all necessary steps to adopt the following

20   corporate governance measures in consideration of the Settlement and maintain such measures for

21   five years from the date of adoption:

      1.     The Compensation Committee Charter shall be revised to require the Compensation Committee on an annual basis to review, with the assistance of outside counsel, Abaxis' equity incentive plans;

      2.     Prior to the granting of any equity incentive award(s) to executive officers, the Board and/or Compensation Committee shall review, with the assistance of outside counsel, Abaxis' equity incentive plans to ensure compliance therewith;

      3.     Equity awards to executive officers shall be approved at a meeting of the Compensation Committee or Board, as applicable, and not by unanimous written consent;

4. Abaxis directors shall be required to receive annual education on relevant topics, e.g., administration of the Company's compensation plans, disclosure obligations to stockholders and the Company's NASDAQ listing requirements;

5. The Company's annual proxy statement shall contain a certification from the Compensation Committee and/or the Board, as applicable, that they have reviewed the terms of the Company's equity incentive plans and that all equity awards granted during the prior fiscal year were granted in compliance with the terms of the Company's equity incentive plans;

6. The Board or Compensation Committee shall retain an independent compensation consultant each year;

7. The Compensation Committee Charter shall be revised to require the Compensation Committee to consist of at least three (3) members;

8. The Company's stock plan administrator shall:

   a. Become a member of the National Association of Stock Plan Professionals; and

   b. Attend a minimum of eight (8) hours of training sponsored by the National Association of Stock Plan Professionals per fiscal year for the next five (5) fiscal years;

9. The Company, with the assistance of outside counsel, will conduct an annual training session for the Company's stock plan administrator regarding equity incentive plan administration procedures;

10. The Company will adopt a compensation clawback policy that includes the following provisions, among other things:

    a. If the Company is required to prepare an accounting restatement for any fiscal quarter or year due to the material noncompliance of the Company with any financial reporting requirement, and the Board determines that misconduct contributed to the noncompliance that resulted in the obligation to restate the Company's financial statements, the Board may require (i) in the case of the Company's Chief Executive Officer and Chief Financial Officer, that each such individual repay to the Company the compensation listed in paragraphs (i), (ii), and (iii) below, regardless of which officer's misconduct contributed to the noncompliance that resulted in the obligation to restate the Company's financial statements, and (ii) in the case of any other officer whose misconduct contributed to the noncompliance which resulted in the obligation to restate the Company's financial statements, that each such individual repay to the Company the compensation listed in (i), (ii) and (iii) below, in each case as and to the extent permitted by applicable law:

       i. Up to the full amount of the difference between any bonus compensation received by the officer that was calculated based on the financial statements that were subsequently restated and the lower bonus compensation to which the officer would have been entitled had the financial statements been properly reported;

ii.      Up to the full amount of any equity incentive grant received by the officer that was determined based on the financial statements that were subsequently restated;

iii.      If, after the release of earnings for any period with respect to which financial statements were subsequently restated and prior to the announcement of such restatement, the officer sold any shares of Company common stock acquired pursuant to an option or other award granted after the adoption of this policy under the Company's equity incentive plans, the excess of (i) the actual aggregate sales proceeds from the officer's sale of those shares, over (ii) the aggregate sales proceeds the Affected Officer would have received from the sale of those shares at a price per share determined appropriate by the Board in its discretion to reflect what the Company's common stock price would have been if the restatement had occurred prior to such sales; provided, however, that the aggregate sales proceeds determined by the Board under this clause (1) with respect to shares acquired upon exercise of an option shall not be less than the aggregate exercise price paid for those shares.

b.      The Board may seek recoupment from the Officer(s) for the amounts described above from any of the following sources: prior incentive compensation payments; future payments of incentive compensation; cancellation of outstanding equity awards; future equity awards; and direct repayment. To the extent permitted by applicable law, the Company may offset such amount against any compensation or other amounts owed by the Company to the Officer. If an amount repaid to the Company under this Policy will not be fully deductible by the Officer, the Board may, in its discretion, reduce the amount to be repaid by the amount determined by the Board to reasonably take into account the adverse tax consequences of such repayment to the Officer.

The Parties agree that these measures constitute a benefit to Abaxis and its stockholders.

## IV.      THE CLASS SHOULD BE CERTIFIED

The Parties agree that the Action should be certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a), 23(b)(1) and 23(b)(2). The Parties further agree that the settlement Class is to consist of all persons and entities that held common stock in Abaxis as of the close of business on August 31, 2012, which represents the record date for the stockholders entitled to vote at Abaxis's October 24, 2012 Annual Meeting (excluding the Excluded Persons and the legal representatives, heirs, successors or assigns of any such Excluded Person).[6]

---

[6] "Excluded Persons" is defined in the Stipulation as "the Individual Defendants, members of the immediate family of any Individual Defendant, and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Individual Defendant."

1   Rule 23(a) of the Federal Rules of Civil Procedure provides four prerequisites that must be

2   satisfied for class certification: (1) the class must be so numerous that joinder of all members is

3   impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or

4   defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

5   representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.

6   23(a)(1)-(4); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 471 (E.D. Cal. 2009).  In addition,

7   Rule 23(b) "requires a plaintiff to establish one of the following: (1) that there is a risk of

8   substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the

9   class as a whole would be appropriate; or (3) that common questions of law or fact predominate and

10   the class action is superior to other available methods of adjudication."  *Id*. at 471-72.  Here, the

11   elements of Rules 23(a) and (b) are readily satisfied.

### A.   Numerosity

13   "The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that

14   joinder of all members is impracticable."  *Wright*, 259 F.R.D. at 472.  Here, the proposed Class

15   consists of all Abaxis stockholders as of the close of business on August 31, 2012, excluding

16   Defendants and certain of their affiliates.  Abaxis's common stock trades on the NASDAQ under

17   the symbol "ABAX."  According to the 2012 Proxy, there were 21,932,263 shares of Abaxis

18   common stock outstanding as of August 31, 2012 held by thousands of beneficial holders

19   throughout the United States.  Accordingly, the numerosity requirement is satisfied.  *See*, *e.g.*, *In re*

20   *Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 634-35 (S.D. Cal. 2008) (numerosity prong

21   satisfied where millions of shares of company stock were traded on national exchange and

22   stockholders were spread geographically throughout the United States).

### B.   Commonality

24   A class has sufficient commonality "if there are questions of fact and law which are

25   common to the class."  Fed. R. Civ. P. 23(a)(2).  Here, "[t]he commonality requirement is satisfied

26   because the issue of whether [Abaxis] issued false and misleading proxy statements is common to

27

28

all class members." *In re Apple Inc. Sec. Litig.*, No. 06-5208, 2011 WL 1877988, at *2 (N.D. Cal. May 17, 2011).

### C. Typicality

The typicality prerequisite is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ .P. 23(a)(3). Here, the typicality requirement is met because "the claims of [Plaintiff] are identical to … those of other class members" in that they "arise from [Abaxis]'s allegedly false and misleading proxy statement[]." *In re Apple*, 2011 WL 1877988, at *2.

### D. Adequacy

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, there are no conflicts between Plaintiff and its counsel and absent Class members, as Plaintiff will not receive any benefit from the Settlement not shared by other Class members. Furthermore, Plaintiff's Counsel[7] vigorously prosecuted the Action by, *inter alia*, obtaining the injunction and opposing Defendants' Motions to Dismiss the Complaint. Accordingly, the adequacy requirement is satisfied.

### E. Rule 23(b)

In addition to satisfying the four prerequisites of Rule 23(a), a class action must meet one of the criteria set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Here, Plaintiff alleged that the Individual Defendants breached their fiduciary duties to the Class and disseminated materially false and misleading statements concerning the Plan Amendment. Under these circumstances, Class certification is appropriate under Rules 23(b)(1) and (b)(2) because all members of the stockholder Class are situated identically with respect to every issue of liability, litigating the matters separately would subject the defendant to the risk of different standards of conduct with respect to the same

---

[7] The term "Plaintiff's Counsel" refers to the law firms of Kessler Topaz Meltzer & Check, LLP and Saxena White, P.A.

1  action, and Plaintiff sought injunctive relief in the Action on behalf of the entire Class.  *See*, *e.g.*,

2  *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-59 (2d Cir. 1982) (affirming

3  certification of class action pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B) and (b)(2) where

4  plaintiff alleged, *inter alia*, that defendants disseminated materially false and misleading

5  information statement and breached fiduciary duties to stockholders); *Aguilar v. Melkonian Enters.,*

6  *Inc.*, No. 05-0032, 2007 WL 201180, at *4-5 (E.D. Cal. Jan. 24, 2007) (class certified under Fed. R.

7  Civ. P. 23(b)(1) and (b)(2) for breach of fiduciary duty claims).  *See also Nottingham Partners v.*

8  *Dana*, 564 A.2d 1089, 1094-97 (Del. 1989) (certification under (b)(2) proper where "complaint

9  alleged breaches of fiduciary duty and disclosure violations"); *In re Cox Radio, Inc. S'holders*

10  *Litig.*, No. 4461-VCP, 2010 WL 1806616, at *8 (Del. Ch. May 6, 2010) ("actions challenging the

11  propriety of director conduct in carrying out corporate transactions are properly certifiable under

12  both subdivisions (b)(1) and (b)(2).").

13         **F.      The Settlement Notice Was Adequate**

14         On April 4, 2014, the Parties held a telephonic conference with the Court during which the

15  Court provided comments to the 8-K Notice, and requested the Parties to agree upon the Press

16  Release Notice.  These forms of notice were approved by the Court in its April 15, 2014 order

17  preliminarily approving the Settlement, and were disseminated to stockholders in accordance with

18  the preliminary approval order on April 18, 2014.  *See* Declaration Exs. D and E.  The Press

19  Release Notice is also available on Abaxis's website.[8]

20         Under Federal Rule 23(c), the parties need only provide notice "reasonably certain to inform

21  the absent members of the plaintiff class."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-1365,

22  2010 WL 1687832, at *16 (N.D. Cal. Apr. 22, 2010) (citation and quotation omitted).  Here, the

23  notices go far beyond this standard.  Each of the notices contained a description of the nature of the

24  action and the issues involved in the litigation, defined the class, provided the procedure by which

25  stockholders may request an appearance at the Settlement hearing and provided instructions to

26  stockholders to lodge any objections to the Settlement.  *See* Declaration Exs. D and E.

27  ───────────────
[8] *See* http://phx.corporate-ir.net/phoenix.zhtml?c=115152&p=irol-newsArticle&ID=1919997.

28

Accordingly, the notices of the Settlement are adequate. *See* Fed. R. Civ. P. 23(c)(2)(B) (discussing requirements for content of mandatory notice for class certified pursuant to Fed. R. Civ. P. 23(b)(3), which are more onerous than requirements for elective notice pursuant to Rules 23(b)(1) and (2)); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170-72 (S.D. Cal. 2007) (discussing notice requirements); *In re Sanmina-SCI Corp. Deriv. Litig.*, Master Case No. C-06-03783-JF, Order (N.D. Cal. May 5, 2009) (approving notice via press release and filing of Form 8-K) (Declaration Ex. I).

Hence, the Court should certify the Class for purposes of the Settlement.

## V.   THE STANDARDS FOR JUDICIAL APPROVAL OF A SETTLEMENT

The Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 355 F.2d 1268, 1276 (9th Cir. 1992). This is also true with respect to Plaintiff's derivative claims brought on behalf of nominal defendant Abaxis, as "[t]here is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-6110-SBA(JCS), 2009 U.S. Dist. LEXIS 24973, at *6 (N.D. Cal. Mar. 18, 2009).

Nevertheless, the Court must still review the proposed Settlement to determine that it is "fair, reasonable and adequate." *In re Quintus Sec. Litig.*, No. 00-4263, 2006 WL 3507936, at *2 (N.D. Cal. Dec. 5, 2006) (citing Fed. R. Civ. P. 23(e)(1)(C)). Federal Rule of Civil Procedure 23.1(c) provides that derivative claims may only be settled "with the court's approval." Notice of a proposed derivative settlement, voluntary dismissal, or compromise must be given to stockholders or members in the manner that the court orders. Fed. R. Civ. P. 23.1(c). The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement, many of which are also applicable to a settlement of derivative claims:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of proceedings; (6) the experience and views of counsel; (7)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 4:12-CV-05086-YGR

- 11 -

the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Id.* (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  However, these factors are non-exclusive and the Court should exercise its "sound discretion" in analyzing the factors most pertinent to the Settlement.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) (discussing discretionary review of settlement); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 n.7 (9th Cir. 2004) (court factors are "non-exclusive").  Moreover, the Ninth Circuit has cautioned that:

> the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original).

Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Clark v. Ecolab Inc.*, No. 07- 8623, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (citation and internal quotation marks omitted).

## VI.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

As a result of settlement negotiations among counsel for Plaintiff, Abaxis, acting by and through its Board, and the Individual Defendants, the Parties have agreed to a resolution of Plaintiff's class and derivative claims that provides substantial benefits to Abaxis and its

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 4:12-CV-05086-YGR

- 12 -

stockholders.  Furthermore, numerous of the Ninth Circuit's settlement factors demonstrate that the Settlement is fair, reasonable and adequate.  Among other things, the Settlement eliminates the risk that Plaintiff might continue litigating this case but ultimately wind up not obtaining any further relief.  The Settlement also eliminates the need of the Parties to incur substantial expenses in connection with lengthy litigation, and conserves the resources of the Parties and the Court.  In addition, all parties to the Action are represented by highly qualified counsel who used their substantial experience to negotiate the Settlement.  Recognizing the fairness of the Settlement, to date no Abaxis stockholders have objected to the Settlement.  For these reasons, as further set forth below, the Settlement is fair, reasonable and adequate and should be approved.

### A.    The Strength of Plaintiff's Case and the Risk of Continued Litigation

Plaintiff believes that its claims are meritorious.  However, had Plaintiff continued to litigate, there was a real risk that Plaintiff would not have been successful.  *See*, *e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (affirming approval of derivative settlement and noting that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful.").  At the time the Parties engaged in settlement negotiations, Defendants' Motions to Dismiss had been fully briefed and oral argument had been held.  Furthermore, the Court had requested, and the Parties had submitted, additional briefing concerning whether the Board and Compensation Committee retroactively ratified and approved all RSUs issued in excess of the previous limits under the 2005 Plan, thus potentially mooting Plaintiff's claims for damages.  While Plaintiff believes that its arguments against Defendants' Motions to Dismiss are strong, there is no certainty that Plaintiff would be victorious.

Even if Plaintiff were able to defeat the pending Motions to Dismiss, Plaintiff still faced considerable future challenges.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Although Plaintiff's case has survived two motions to dismiss … it still faces numerous hurdles.").  As Defendants noted in their Motions to Dismiss, to prevail at trial, Plaintiff would have had to prove that the Defendants committed non-exculpated breaches of fiduciary duty in connection with the Company's violations of the 2005 Plan.  Abaxis maintains an exculpatory

provision pursuant to California Corporations Code Section 309, which eliminates "the liability of a director for monetary damages" for breaches of the fiduciary duty of care. Thus, in order to recover damages in this Action, Plaintiff would have had to prove that the Defendants breached their fiduciary duty of loyalty — a difficult proposition. The Defendants would have also continued to argue that Abaxis sustained no damages, thus presenting the real possibility that Plaintiff could succeed on certain aspects of its claims and yet obtain no recovery for the Company or its stockholders. While Plaintiff believes that it has strong arguments to overcome these contentions, the prospect that the Defendants could have prevailed on these issues made establishing liability and obtaining a recovery in the Action uncertain.

Lastly, if Plaintiff were successful at trial, there is no guarantee that any judgment would ultimately be sustained on appeal or by the trial court. For example, in *In re Apollo Grp., Inc. Sec. Litig.*, No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment as a matter of law overturned a jury verdict of $277 million in favor of stockholders based on insufficient evidence presented at trial to establish loss causation. Accordingly, the strength of Plaintiff's case and the risks of continued litigation support approving the Settlement.

**B.    The Expense, Complexity and Likely Duration of Further Litigation**

Another factor militating in favor of the Settlement is the complexity, expense and likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 859 (E.D. Mo. 2005). It is important to note that "[s]tockholder litigation is notably difficult and notoriously uncertain even in the best of circumstances." *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F.Supp. 525, 529 (E.D. Pa. 1990) (approving settlement of stockholder class action) (citation omitted); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable."); *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *6-7; *Cohn*, 375 F. Supp. 2d at 852 ("'Settlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."'") (citations omitted). This Action would not have been an exception to this rule.

1   If not for the Settlement, the Action would have continued to be fiercely contested by the

2   Parties.  Continued litigation would have been complex, costly and of substantial duration.  *See In*

3   *re AOL Time Warner S'holder Deriv. Litig.*, No. 02-6302, 2006 WL 2572114, at *5 (S.D.N.Y.

4   2006) (noting that "the prosecution of this action would require the Company to incur substantial

5   costs" and that approving the settlement "will allow the Company to direct its full attention to its

6   substantive business"); *In re Metro. Life Deriv. Litig.*, 935 F. Supp. 286, 294 (S.D.N.Y. 1996) ("In

7   view of the effort and expense that would be required to take this case to and through trial,

8   settlement would undoubtedly be in the best interest of all the parties . . . .").  Assuming, *arguendo*,

9   that Plaintiff defeated Defendants' Motions to Dismiss, conducting discovery thereafter would have

10  presented a lengthy and expensive endeavor.  Formal document discovery would need to be

11  propounded, reviewed and completed.  This discovery would involve years of Board and

12  Compensation Committee minutes and other documents concerning the granting of RSUs pursuant

13  to the 2005 Plan, and detailed records of all of the RSU grants awarded pursuant to the 2005 Plan.

14  The breadth of document discovery would result in substantial expense for all parties.  Depositions

15  would also have to be taken.  Plaintiff would likely need to depose many of the 12 Individual

16  Defendants, and likely numerous Abaxis employees, concerning the Company's granting of RSUs

17  going back many years.  The pertinent time period presents its own significant difficulties, as

18  witnesses may not remember key facts after substantial time has passed.  In addition, the Parties

19  would need to designate experts and conduct expert discovery, as well as research, prepare and

20  oppose any motions for summary judgment.

21  Lastly, a trial on the merits would have to be conducted, which would occupy the Parties

22  and the Court for a substantial period of time.  Any trial in this Action would likely be complex,

23  expensive and time consuming.  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456

24  (S.D.N.Y. 2004).  A trial in this instance where Plaintiff has brought derivative claims on behalf of

25  Abaxis would present special complexities as it calls for a stockholder to step into the corporation's

26  shoes.  *See Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 548 (1949) (explaining nature of

27  derivative suits).  Moreover, any judgment favorable to Plaintiff would likely be the subject of post-

28

1   trial motions and appeals, which would prolong the Action for years with the ultimate outcome

2   uncertain.  The Settlement eliminates these risks.  *Velez v. Novartis Pharm.*, No. 04 Civ. 09194

3   (CM), 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010) ("Settlement at this juncture results in a

4   substantial and tangible present recovery, with the attendant risk and delay of post-trial motions and

5   appeals.") (citation and internal quotation marks omitted).  In addition, any judgment would not

6   include the substantial corporate governance benefits obtained through the Settlement.  And even a

7   verdict is no guarantee that Abaxis and its stockholders would recover anything.  *See* Section IV.A,

8   *supra*.

9        The Settlement provides immediate and substantial benefits to Abaxis and its stockholders

10  and avoids years of potential delay, added expense and uncertainty, which further supports approval

11  of the Settlement.

12       **C.      The Terms of the Settlement**

13       As a result of the Settlement of the Action, Defendants have adopted or will adopt numerous

14  corporate governance measures that are directly responsive to Plaintiff's allegations and specifically

15  improve the manner in which Abaxis grants equity awards to its employees and directors.  These

16  governance reforms include, among others, the annual review of equity awards; retention of an

17  independent compensation consultant; increased training; requiring that equity awards be approved

18  at meetings rather than by unanimous written consent; and increasing the number of independent

19  directors serving on the Compensation Committee.  These corporate governance measures will be

20  maintained for a period of at least five (5) years.  As set forth in the Stipulation, the Parties agree

21  that these reforms provide a substantial benefit to Abaxis and its stockholders, and were adopted (or

22  will be adopted) as a result of the filing, pendency, prosecution and settlement of the Action.

23       Adoption of corporate governance reforms that improve the equity compensation practices

24  and other internal procedures at a public company constitutes a substantial benefit to a corporation

25  and its stockholders.  *See, e.g.*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395, 90 S.Ct. 616, 24

26  L.Ed. 593 (1970); *Fletcher v. A. J. Indus., Inc.*, 266 Cal. App. 2d 313, 324-25 (Cal. App. 1st Dist.

27  1968); *In re NVIDIA Corp. Deriv. Litig.*, No. C-06-6110, 2008 WL 5382544, at *1 (N.D. Cal. Dec.

28

1  22, 2008); *Ryan v. Gifford*, No. 2213-CC, 2009 WL 18143, at *10 (Del. Ch. Jan. 2, 2009).  Indeed,

2  the relief obtained as a result of the Settlement of the Action is similar to the relief obtained in

3  settlements of other stockholder actions alleging breaches of fiduciary duty in connection with the

4  equity compensation practices of public corporations.

5  For instance, in *In re Rambus Inc. Deriv. Litig.*, No. 06-3513-JF-HRL, 2009 WL 166689

6  (N.D. Cal. Jan. 20, 2009), the court approved a settlement providing for, among other things,

7  revisions to the compensation committee's charter to require annual review of equity compensation

8  awards and the retention of compensation consultants to assist the compensation committee with the

9  granting of equity awards.  *See In re Rambus Inc. Deriv. Litig.*, No. 06-3513-JF-HRL, Stipulation of

10 Settlement at 10-13 (N.D. Cal. Oct. 29, 2008) (Declaration Ex. R).  These governance reforms were

11 found to provide substantial benefits to Rambus, *see id*. at *3, and are comparable to the reforms

12 adopted by Abaxis in connection with the Settlement.  Similarly, in *Bacas v. Way*, No. 07-cv-0456-

13 MH (S.D. Tex.), the court approved a settlement that provided for, among other things, requiring all

14 equity grants to be made only at a meeting of the full board of directors or compensation

15 committee.  *See Bacas*, Stipulation of Settlement at 7-10 (S.D. Tex. Jan. 9, 2008) and Order and

16 Final Judgment (S.D. Tex. Apr. 1, 2008) (Declaration Exs. K and L).  *See also In re Affymetrix*

17 *Deriv. Litig.*, No. C-06-05353-JW, Order (N.D. Cal. June 30, 2009) (approving settlement

18 providing for adoption of substantial corporate governance reforms to improve equity compensation

19 practices) (Declaration Ex. J); *City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-

20 122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10,

21 2008) (approving settlement implementing corporate governance practices to address improper

22 stock option granting practices) (Declaration Ex. N).

23 The Settlement's substantial corporate governance reforms require Abaxis not only to offer

24 more transparency and consistency in its compensation and oversight policies, but also will help the

25 Company avoid future litigation.  The governance reforms achieved through the Action are

26 substantial and will provide ongoing benefits to the Company for years after the Settlement is

27 approved.  In sum, the Settlement confers substantial benefits upon Abaxis and its stockholders and

28

1    is an outstanding resolution for the Company and its stockholders of a case of substantial

2    complexity and costs.  Accordingly, the Settlement should be approved.

3        **D.      The Extent of Discovery Completed and the State of Proceedings**

4        The stage of the proceedings and the amount of discovery completed is another factor that

5    courts consider in determining the fairness, reasonableness and adequacy of a settlement.  *Officers*

6    *for Justice*, 688 F.2d at 625; *Girsh v. Jespen*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel*

7    *Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).   Ninth Circuit law is clear that "'formal

8    discovery is not a necessary ticket to the bargaining table' where the parties have sufficient

9    information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213

10   F.3d 454, 459 (9th Cir. 2000) (citations omitted).  Here, the proceedings have reached a stage where

11   Plaintiff's Counsel were able to make an intelligent evaluation of the Action and the propriety of

12   the Settlement.

13       Before filing the Complaint and continuing thereafter, Plaintiff's Counsel conducted an

14   extensive investigation of the allegations asserted in the Action.  Plaintiff's Counsel reviewed and

15   analyzed voluminous documents, including financial reports, press releases, and SEC filings,

16   concerning Abaxis's compensation and internal control practices and other accounting and financial

17   reporting issues.   The Parties submitted extensive briefing regarding Defendants' Motions to

18   Dismiss, including supplemental briefing ordered by the Court.  In addition, the lengthy settlement

19   negotiations and mediation provided the Parties with an opportunity to conduct extensive analysis

20   of the Parties' respective positions, including the merits of Plaintiff's claims and the Individual

21   Defendants' potential defenses thereto.  *See*, *e.g.*, *AOL Time Warner,* 2006 WL 2572114, at *3

22   (negotiations "spanned an extended period of time and benefited from multiple proposals passed

23   between the parties throughout this period").   In light of the stage of the proceedings, and the

24   substantial work of counsel, Plaintiff and its counsel were able to make an informed decision

25   regarding the merits of the Settlement versus continued litigation.  *See Mego Fin.*, 213 F.3d at 459.

26   Accordingly, this factor supports approval of the Settlement.

27

28

1

**E.      The Experience and Views of Counsel**

2          Significant weight should be attributed to the belief of experienced counsel that settlement is

3     in the best interest of those affected by the Settlement — here, Abaxis and its stockholders.

4     *Officers for Justice*, 688 F.2d at 625.  Plaintiff and Abaxis, acting by and through the Board, and the

5     counsel for each, have independently considered the Settlement and all agree that it is in the best

6     interest of the Company and its stockholders.

7          Plaintiff's counsel are experienced litigators with substantial experience litigating

8     stockholder class and derivative actions.  *See* Declaration Exs. B and C.  As a result of counsel's

9     unparalleled experience in these types of cases, counsel for Plaintiff have unique insight into the

10    legal and factual issues presented.  Counsel used that expertise and experience to effectively and

11    efficiently prosecute the Action and reach an excellent result for Abaxis and its stockholders.  "The

12    recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re*

13    *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (approving settlement of

14    class action where plaintiffs' counsel had substantial experience in securities litigation and "[t]here

15    [wa]s nothing to counter the presumption that Lead Counsel's recommendation is reasonable.)

16    (citation omitted).  Furthermore, counsel for Defendants — Gibson, Dunn & Crutcher, LLP — are

17    some of the most respected litigators in the world.  The experience of counsel supports approval of

18    the Settlement.

19    **F.      The Reaction of Class Members to the Settlement**

20         Having received adequate notice of the Settlement, *see* Section IV.F, *supra*, no Abaxis

21    stockholder has served Plaintiff's Counsel with an objection to the Settlement or notified Plaintiff's

22    counsel of their intention to appear at the Settlement hearing.  *See* Declaration ¶ 43.[9]  Here, "[t]he

23    reaction of class members to the proposed settlement, or perhaps more accurately the absence of a

24    negative reaction, strongly supports settlement."  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp.

25    2d 848, 852 (N.D. Cal. 2010) (approving settlement where "[a] total of zero objections and sixteen

26    opt-outs (comprising 4.86% of the class) were made from the class of roughly three hundred and

27    _____

28    [9] Stockholders have until May 27, 2014 to file any objections to the Settlement.

1    twenty-nine (329) members."); *Churchill Village*, 361 F.3d at 577 (500 opt-outs and 45 objections).

2    Accordingly, the reaction of Class members to the Settlement supports approval of the Settlement.

3 **VII.**    **CONCLUSION**

4      The Settlement represents an outstanding result for Abaxis stockholders and the Company.

5 For the reasons set forth above, the Settlement is fair, reasonable and adequate and should be

6 approved, and Plaintiff respectfully requests that the Court enter the Final Order and Judgment

7 submitted herewith.

8

9 Dated: May 13, 2014                **KESSLER TOPAZ**
                                          **MELTZER & CHECK, LLP**

10

11                                   /s/ Eric L. Zagar
                                  Eric L. Zagar (250519)

12                                   James H. Miller
                                  Matthew A. Goldstein

13                                   280 King of Prussia Road
                                  Radnor, PA 19087

14                                   Phone: (610) 667-7706
                                  Facsimile: (267) 948-2512

15                                   ezagar@ktmc.com
                                  jmiller@ktmc.com

16                                   mgoldstein@ktmc.com

17                                   -and-

18                                   Eli Greenstein (217945)
                                  One Sansome Street, Suite 1850

19                                   San Francisco, CA  94104
                                  Phone: (415) 400-3000

20                                   Fax: (415) 400-3001
                                  egreenstein@ktmc.com

21                                   **SAXENA WHITE, P.A.**

22                                   Joseph E. White, III
                                  Jonathan M. Stein

23                                   Lester R. Hooker (241590)
                                  2424 N. Federal Highway, Suite 257

24                                   Boca Raton, FL 33431
                                  Phone: (561) 394-3399

25                                   Fax: (561) 394-3382

26                                   *Attorneys for Plaintiff*

27

28

Plaintiff's Notice of Motion and Motion for Final Approval of Settlement; Memorandum of     - 20 -
Points and Authorities in Support Thereof
Case No. 4:12-cv-05086-YGR