| | |
|---|---|
| 1 | **KESSLER TOPAZ**<br>   **MELTZER & CHECK, LLP**<br>Eli R. Greenstein (217945)<br>One Sansome Street, Suite 1850<br>San Francisco, CA  94104<br>Phone: (415) 400-3000<br>Fax: (415) 400-3001<br>egreenstein@ktmc.com<br><br>-and-<br><br>Eric L. Zagar (250519)<br>James H. Miller<br>Matthew A. Goldstein<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Phone: (610) 667-7706<br>Facsimile: (267) 948-2512<br>ezagar@ktmc.com<br>jmiller@ktmc.com<br>mgoldstein@ktmc.com<br><br>*Attorneys for Plaintiff* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ST. LOUIS POLICE RETIREMENT SYSTEM, On Behalf Of Itself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant ABAXIS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CLINTON H. SEVERSON, ALBERTO R. SANTA INES, KENNETH P. ARON, VLADIMIR E. OSTOICH, DONALD P. WOOD, MARTIN V. MULROY, RICHARD J. BASTIANI, MICHAEL D. CASEY, HENK J. EVENHUIS, PRITHIPAL SINGH, VERNON E. ALTMAN, AND ERNEST S. TUCKER,<br><br>Defendants,<br><br>and<br><br>ABAXIS, INC.<br><br>Nominal Defendant. | **CASE NO. 12-CV-05086-YGR**<br><br>**DECLARATION OF ERIC L. ZAGAR AND JOSEPH E. WHITE, III, IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

We, Eric L. Zagar and Joseph E. White, III, declare as follows:

1. I, Eric L. Zagar, am a partner of the law firm of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), which, along with Saxena White, P.A. ("Saxena White," and collectively with Kessler Topaz, "Plaintiff's Counsel"), is counsel for Plaintiff St. Louis Police Retirement System ("Plaintiff") in the above-captioned action (the "Action"). Except with regard to statements regarding Saxena White, I have personal knowledge of the matters stated herein based on my active participation in all material aspects of the prosecution of this Action. If called upon, I could and would competently testify that the following facts are true and correct.

2. I, Joseph E. White, III, am a Shareholder of the law firm of Saxena White. Except with regard to statements regarding Kessler Topaz, I have personal knowledge of the matters stated herein based on my active participation in all material aspects of the prosecution of this Action. If called upon, I could and would competently testify that the following facts are true and correct.

3. We make this declaration in support of Plaintiff's motions for final approval of the settlement of this Action and for an award of attorneys' fees and reimbursement of expenses in the Action (collectively, the "Motions").

4. Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the January 16, 2014 Stipulation of Settlement in the Action (the "Stipulation"), attached hereto as Exhibit A.

*Factual Background of the Action*

5. Abaxis, Inc. ("Abaxis" or the "Company") is a California corporation with headquarters in Union City, California. Prior to the commencement of this Action, Abaxis granted equity compensation awards to its employees and directors pursuant to the Company's 2005 Equity Incentive Plan (the "2005 Plan"). Among the equity awards granted pursuant to the 2005 Plan were restricted stock units ("Restricted Stock Units" or "RSUs"). During the relevant period, the 2005 Plan, originally approved by Abaxis stockholders in October 2005 and subsequently amended by the Company and approved by Abaxis stockholders in October 2008 and again in October 2010, contained a provision that no more than 500,000 shares of Company common stock may be issued

under the 2005 Plan upon exercise or settlement of "full value awards," which includes Restricted Stock Units (the "Restricted Stock Limit").

6. During fiscal years 2007-2013, the Grantor Defendants (as defined in the Motions) granted to the Officer Defendants (as defined in the Motions) 960,000 Restricted Stock Units, nearly double the number that could be settled in accordance with the Restricted Stock Limit. In total, since fiscal year 2007, the Abaxis board of directors (the "Board") has granted a total of 2,045,000 Restricted Stock Units, *i.e.*, more than four times the number that could be settled in accordance with the Restricted Stock Limit. As of August 31, 2012, awards consisting of Restricted Stock Units covering an aggregate of 1,119,000 shares of common stock were outstanding under the 2005 Plan.

7. In a Form 8-K filed with the United States Securities and Exchange Commission ("SEC") on August 28, 2012 (the "August 28, 2012 8-K"), the Company stated that it received a letter from the staff of the Listing Qualifications Office of the NASDAQ Stock Market informing the Company that it had failed to comply with Listing Rule 5635(c), which requires listed companies to obtain stockholder approval for material amendments to an equity compensation plan. Specifically, the Company admitted that it "exceeded the full value award limit" because it purportedly believed that "such limit applied to each 500,000-share increase to the overall share reserve increase approved by stockholders in 2005, 2008 and 2010." According to the August 28, 2012 8-K, as of August 28, 2012, the Company had issued 870,179 shares of Common Stock upon settlement of Restricted Stock Units granted under the 2005 Plan since October 2005, some 370,179 units in excess of the Restricted Stock Limit.

8. On September 17, 2012, the Company filed with the SEC a Form DEF14A (the "2012 Proxy") setting the Company's annual meeting for October 24, 2012 (the "Annual Meeting") and soliciting stockholder votes in support of, among other things, approval of proposed amendments to the 2005 Plan to eliminate the Restricted Stock Limit (the "Plan Amendment").

### *The Efforts of Plaintiff's Counsel in the Action*

9. Prior to the commencement of the Action, Plaintiff's Counsel expended substantial time and effort diligently researching and investigating, among other things: (1) Abaxis's equity incentive plans, including the 2005 Plan; (2) Abaxis's historical grants of Restricted Stock Units pursuant to the 2005 Plan; (3) Abaxis's public disclosures concerning its historical grants of Restricted Stock Units; (4) the August 28, 2012 8-K; (5) the 2012 Proxy; (6) applicable California and Delaware law concerning violations of stockholder approved equity compensation plans; and (7) the local rules and procedures of the Court. This research and investigation encompassed review of numerous SEC filings, news and other publicly available information and extensive case law.

10. Following Plaintiff's Counsel's research and investigation, Plaintiff's Counsel expended substantial time drafting Plaintiff's detailed 102-paragraph Verified Shareholder Class Action and Derivative Complaint (the "Complaint"), Plaintiff's motion for preliminary injunction and *ex parte* application to shorten time in advance of a hearing on Plaintiff's motion for preliminary injunction. Plaintiff's Counsel prepared these pleadings in an extremely compressed time period in order to timely file Plaintiff's Complaint and motion for preliminary injunction as soon as practicable following the filing of Abaxis's 2012 Proxy and as far as possible in advance of Abaxis's 2012 Annual Meeting, which Plaintiff sought to enjoin.

11. On October 1, 2012, Plaintiff commenced the Action by filing its Complaint in the Court. The Complaint alleged, *inter alia*, that: (1) the Grantor Defendants violated the terms of the 2005 Plan by purportedly granting to the Officer Defendants and other Abaxis employees more Restricted Stock Units than could be settled pursuant to the Restricted Stock Limit; and (2) in total, the Abaxis Board issued 870,179 shares of common stock upon settlement of Restricted Stock Units granted under the 2005 Plan since October 2005 (370,179 shares in excess of the Restricted Stock Limit) and granted a total of 2,045,000 Restricted Stock Units pursuant to the 2005 Plan.

12. Also on October 1, 2012, Plaintiff filed a motion for preliminary injunction seeking to enjoin Abaxis's October 24, 2012 Annual Meeting because the Company's 2012 Proxy contained materially false and misleading statements regarding the proposed Plan Amendment.

13. On October 5, 2012, the Court granted Plaintiff's *ex parte* application to shorten time and ordered that Defendants (as defined in the Motions) file their opposition to Plaintiff's motion for preliminary injunction on or before October 15, 2012. After Defendants filed their opposition to Plaintiff's motion for preliminary injunction, Plaintiff's Counsel worked expeditiously to file Plaintiff's reply brief on October 18, 2012, in advance of the October 23, 2012 hearing on Plaintiff's motion for preliminary injunction. During this time period, Plaintiff's Counsel were also engaged in negotiations with counsel for Defendants regarding a potential settlement of the Action, which proved to be unsuccessful at that time.

14. On October 23, 2012, the Court granted, in part, Plaintiff's motion for preliminary injunction, enjoining the stockholder vote on the Plan Amendment until the Company made certain additional disclosures in the 2012 Proxy sought by Plaintiff. Following the October 23, 2012 hearing, Plaintiff's Counsel negotiated with Defendants' counsel regarding the additional disclosures Abaxis would make regarding the Plan Amendment. In addition, on October 24, 2012, Plaintiff's Counsel wired to the Court security in the amount of $100,000 to comply with the Court's order that the injunction be conditioned upon Plaintiff's posting of a $100,000 bond. A $100,000 bond was subsequently substituted for Plaintiff's Counsel's $100,000 security payment.

15. On October 24, 2012, the Company filed with the SEC supplemental proxy materials containing the additional disclosures required by the Court. Thereafter, on November 8, 2012, the Company reconvened the Annual Meeting in order to allow stockholders to vote on the Plan Amendment, which was subsequently approved.

16. On December 28, 2012, Defendants filed motions to dismiss Plaintiff's derivative claims (the "Motions to Dismiss"). Abaxis and the director defendants filed one motion to dismiss, and the officer defendants filed a separate motion to dismiss. Among other things, Defendants argued that: Plaintiff failed to adequately plead demand futility; no financial harm resulted from the

granting of the excess RSUs, thus precluding Plaintiff's claim for damages and unjust enrichment; and, even assuming there are financial damages, Abaxis's charter contains an exculpatory provision that eliminates directors' liability for monetary damages. Defendants also argued that the Board and the Compensation Committee retroactively ratified the excess RSUs at issue in the Action, thereby mooting Plaintiff's claims.

17. After receiving Defendants' Motions to Dismiss, Plaintiff's Counsel diligently researched the issues raised therein, and prepared oppositions to both Motions to Dismiss that were filed on January 29, 2013. Defendants filed their reply briefs in support of their Motions to Dismiss on February 12, 2013.

18. On April 4, 2013, the Court entered an order directing the parties in the Action (the "Parties") to submit supplemental briefing on the effect on Plaintiff's claims of the Board and the Compensation Committee's purported ratification of the excess RSUs. Plaintiff's Counsel promptly and diligently researched and prepared a brief addressing the questions raised by the Court, which was filed on April 16, 2013. Oral argument on Defendants' Motions to Dismiss was held on May 7, 2013.

19. Following the hearing on Defendants' Motions to Dismiss, counsel for the Parties engaged in extensive settlement negotiations. Accordingly, at the Parties' request, the Court agreed to defer ruling on the Motions to Dismiss pending the Parties' efforts to reach a settlement of the Action  The Parties exchanged numerous draft settlement proposals, which ultimately resulted in the settlement terms contained in the December 10, 2013 memorandum of understanding ("MOU") and the January 16, 2014 Stipulation. During the settlement negotiation process, Plaintiff's Counsel participated in numerous discussions with counsel for Defendants, participated in multiple Court-sponsored alternative dispute resolution teleconferences, attended a mediation with Jed Melnick, a highly respected mediator, on September 20, 2013, and continued to research the strength of Plaintiff's claims and the merits of a potential settlement.

20. The Parties began negotiating the amount of fees and expenses payable to Plaintiff's Counsel in connection with the substantial benefits conferred upon Abaxis and its stockholders as a

result of the prosecution and settlement of the Action after the substantive terms of the settlement were negotiated. However, the Parties have not been able to reach an agreement on the amount of such fees and expenses payable to Plaintiff's Counsel.

21. During the time that Plaintiff's Counsel was negotiating the potential settlement of the Action, they were also diligently working to draft the MOU and the Stipulation, as well as the supporting settlement documents, such as the preliminary approval order, settlement notice and final approval order. The drafting of these documents involved the exchange of multiple drafts between Plaintiff's Counsel and Defendants' counsel, and extensive negotiations concerning the substance of the settlement documents.

22. After extensive negotiations, on December 10, 2013, the Parties entered into the MOU memorializing their agreement in principle to settle the Action. Following additional negotiations concerning the form and substance of the Stipulation and supporting settlement documents, the Parties executed the Stipulation on January 16, 2014. During this time period, Plaintiff's Counsel also researched and drafted Plaintiff's Motion for Preliminary Approval of Settlement and Memorandum of Law in Support Thereof, along with supporting documents.

23. On January 17, 2014, Plaintiff filed its Motion for Preliminary Approval of Settlement and Memorandum of Law in Support Thereof. Therein, Plaintiff requested that the Court preliminarily approve the terms of the proposed settlement and approve the form of settlement notice that was to be filed by Abaxis in a Form 8-K with the SEC (the "8-K Notice").

24. On April 4, 2014, the Parties held a telephonic conference with the Court during which the Court provided comments to the proposed preliminary approval order and 8-K Notice, and requested the Parties to agree upon an additional form of notice that would be disseminated to Abaxis stockholders. Following the April 4, 2014 conference with the Court, Plaintiff's Counsel engaged in additional negotiations with Defendants' counsel regarding the form of the additional notice that would be disseminated to Abaxis stockholders in connection with the settlement. These negotiations resulted in the Parties' agreement upon a form of settlement notice to be published by

Abaxis in a press release (the "Press Release Notice"), which was submitted to the Court on April 11, 2014.

25. The Court preliminarily approved the settlement on April 15, 2014. Following the Court's preliminary approval of the settlement, Plaintiff's Counsel diligently researched and prepared the Motions.

***Kessler Topaz's Time and Expenses***

26. Kessler Topaz's attorneys and staff expended 702.50 hours in connection with the prosecution and settlement of the Action from inception through May 6, 2014.

27. Based upon the number of hours spent on this case by Kessler Topaz, the lodestar amount for Kessler Topaz attorney and professional staff time based on the firm's current billing rates is $295,088.75. The below table is a summary of the number of hours worked and the lodestar incurred by Kessler Topaz attorneys and professional staff who performed services in this case from the Action's inception through May 6, 2014. The hourly rates shown below are the usual and customary rates charged in all of our cases, and have been approved by other courts in connection with settlements of stockholder litigation:

| NAME | TITLE | HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|---|
| Lee Rudy | Partner | $700.00 | 21.00 | $14,700.00 |
| Eric Zagar | Partner | $675.00 | 120.00 | $81,000.00 |
| Robin Winchester | Partner | $650.00 | 3.00 | $1,950.00 |
| James Miller | Associate | $424.00 | 178.75 | $75,968.75 |
| Matthew Goldstein | Associate | $360.00 | 270.50 | $97,380.00 |
| David Uris | Staff Attorney | $395.00 | 7.00 | $2,765.00 |
| Katherine Nguyen | Paralegal | $250.00 | 17.50 | $4,375.00 |
| Christopher McGinnis | Paralegal | $200.00 | 55.00 | $11,000.00 |
| Doug Tewksbury | Paralegal | $200.00 | 29.75 | $5,950.00 |
| **Total** | | | **702.50** | ***$295,088.75*** |

28. In addition to the hours listed above, Kessler Topaz wrote off a total of 41.50 hours of time as inefficient under the circumstances of this case, which represents 5.6 percent of total pre-write-off hours.

DECLARATION OF ERIC L. ZAGAR AND JOSEPH E. WHITE, III, IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
CASE NO. 12-CV-05086-YGR
- 7 -

29. As set forth in the following table, the hours summarized in paragraph 27 were incurred in four (4) stages of the Action: (1) initial case investigation, preparation of Plaintiff's Complaint, and researching, drafting and successfully arguing Plaintiff's motion for preliminary injunction; (2) researching, drafting and arguing in connection with Defendants' Motions to Dismiss Plaintiff's Complaint; (3) negotiating and mediating the settlement of the Action, and drafting documents memorializing the settlement; and (4) drafting papers in support of preliminary and final approval of the settlement and in support of Plaintiff's application for reimbursement of fees and expenses.

| PHASE OF LITIGATION | HOURS SPENT BY KESSLER TOPAZ | LODESTAR SPENT BY KESSLER TOPAZ |
|---|---|---|
| Case Investigation, Complaint and Motion for Preliminary Injunction | 257.10 | $114,778.50 |
| Motions to Dismiss | 181.15 | $73,867.75 |
| Negotiating and Mediating Settlement | 180.25 | $72,875.00 |
| Drafting Preliminary and Final Approval Papers | 84.00 | $33,567.50 |
| *Total* | 702.50 | $295,088.75 |

30. Kessler Topaz incurred a total of $34,441.66 in unreimbursed expenses in connection with the prosecution of the Action. All of the expenses incurred pertaining to this case are reflected in the books and records of Kessler Topaz. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. The expenses are broken down as follows:

| EXPENSE DESCRIPTION | AMOUNT |
|---|---|
| Filing Fees | $5,370.95 |
| Process Server, Messenger, Courier, Mail & Delivery | $1,386.55 |
| Internal Reproduction Costs | $1,183.80 |
| Meals, Hotels & Transportation | $10,023.39 |
| Online Research | $9,176.97 |
| Mediation | $7,300.00 |
| *Total* | *$34,441.66* |

31. In summary, Kessler Topaz spent 702.50 hours of professional time on this case from inception to May 6, 2014, yielding a lodestar amount of $295,088.75, and incurred a total of $34,441.66 in unreimbursed expenses in connection with the prosecution of this case.

DECLARATION OF ERIC L. ZAGAR AND JOSEPH E. WHITE, III, IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
CASE NO. 12-CV-05086-YGR

- 8 -

32. Attached hereto as Exhibit B is a current copy of Kessler Topaz's firm résumé.

*Saxena White's Time and Expenses*

33. Saxena White's attorneys and staff expended 528.75 hours in connection with the prosecution and settlement of the Action from inception through April 29, 2014.

34. Based upon the number of hours spent on this case by Saxena White, the lodestar amount for Saxena White attorney and professional staff time based on the firm's current billing rates is $275,711.25. The below table is a summary of the number of hours worked and the lodestar incurred by Saxena White attorneys and professional staff who performed services in this case from the Action's inception through April 29, 2014. The hourly rates shown below are the usual and customary rates charged in all of our cases, and have been approved by other courts in connection with settlements of stockholder litigation:

| NAME | TITLE | HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|---|
| Joseph E. White | Shareholder | $725.00 | 64.00 | $46,400.00 |
| Maya S. Saxena | Shareholder | $725.00 | 40.75 | $29,543.75 |
| Jonathan M. Stein | Senior Counsel | $695.00 | 95.25 | $66,198.75 |
| Lester R. Hooker | Associate | $455.00 | 182.50 | $83,037.50 |
| Jessenia Canot | Associate | $350.00 | 58.25 | $20,387.50 |
| Kathryn W. Weidner | Associate | $350.00 | 55.25 | $19,337.50 |
| Dianne M. Anderson | Associate | $350.00 | 27.50 | $9,625.00 |
| Stefanie Leverette | Paralegal | $225.00 | 5.25 | $1,181.25 |
| **Total** | | | **528.75** | **$275,711.25** |

35. In addition to the hours listed above, Saxena White wrote off a total of 139.25 hours of time as inefficient under the circumstances of this case, which represents 20.8 percent of total pre-write-off hours.

36. As set forth in the following table, the hours summarized in paragraph 34 were incurred in four (4) stages of the Action: (1) initial case investigation, preparation of Plaintiff's Complaint and researching, drafting and successfully arguing Plaintiff's motion for preliminary injunction; (2) researching, drafting and arguing in connection with Defendants' Motions to Dismiss Plaintiff's Complaint; (3) negotiating and mediating the settlement of the Action, and

drafting documents memorializing the settlement; and (4) drafting papers in support of preliminary and final approval of the settlement and in support of Plaintiff's application for reimbursement of fees and expenses.

| PHASE OF LITIGATION | HOURS SPENT BY SAXENA WHITE | LODESTAR SPENT BY SAXENA WHITE |
|---|---|---|
| Case Investigation, Complaint and Motion for Preliminary Injunction | 109.25 | $59,680.00 |
| Motions to Dismiss | 266.75 | $126,612.50 |
| Negotiating and Mediating Settlement | 111.00 | $69,977.50 |
| Drafting Preliminary and Final Approval Papers | 41.75 | $19,441.25 |
| *Total* | *528.75* | *$275,711.25* |

37. Saxena White incurred a total of $16,790.23 in unreimbursed expenses in connection with the prosecution of the Action. All of the expenses incurred pertaining to this case are reflected in the books and records of Saxena White. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. The expenses are broken down as follows:

| EXPENSE DESCRIPTION | AMOUNT |
|---|---|
| Filing Fees | 610.00 |
| Postage & Delivery | 485.08 |
| Online Research | 1,080.81 |
| Travel, Lodging, Parking & Tolls | 12,224.86 |
| Telephone, Photocopy, Print & Fax | 2,389.48 |
| *Total* | *$16,790.23* |

38. In summary, Saxena White spent 528.75 hours of professional time on this case from inception to April 29, 2014, yielding a lodestar amount of $275,711.25, and incurred a total of $16,790.23 in unreimbursed expenses in connection with the prosecution of this case.

39. Attached hereto as Exhibit C is a current copy of Saxena White's firm résumé.

//

//

//

//

//

DECLARATION OF ERIC L. ZAGAR AND JOSEPH E. WHITE, III, IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
CASE NO. 12-CV-05086-YGR
- 10 -

*The Collective Time and Expenses of Plaintiff's Counsel*

40. Collectively, Plaintiff's Counsel spent 1,231.25 hours of professional time on this case from inception to May 6, 2014, yielding a lodestar amount of $570,800.00, as follows:

| PHASE OF LITIGATION | HOURS SPENT BY PLAINTIFF'S COUNSEL | LODESTAR SPENT BY PLAINTIFF'S COUNSEL |
|---|---|---|
| Case Investigation, Complaint and Motion for Preliminary Injunction | 366.35 | $174,458.50 |
| Motions to Dismiss | 447.90 | $200,480.25 |
| Negotiating and Mediating Settlement | 291.25 | $142,852.50 |
| Drafting Preliminary and Final Approval Papers | 125.75 | $53,008.75 |
| ***Total*** | ***1,231.25*** | ***$570,800.00*** |

41. Collectively, Plaintiff's Counsel incurred a total of $51,231.89 in unreimbursed expenses in connection with the prosecution of this case as follows:

| EXPENSE DESCRIPTION | AMOUNT |
|---|---|
| Filing Fees | $5,980.95 |
| Process Server, Messenger, Courier, Mail, Delivery & Postage | $1,871.63 |
| Online Research | $10,257.78 |
| Hotel, Meals, Transportation, Parking & Tolls | $22,248.25 |
| Telephone, Photocopy, Print & Fax | $3,573.28 |
| Mediation | $7,300.00 |
| ***Total*** | ***$51,231.89*** |

*The Reaction of Abaxis Stockholders to the Settlement*

42. On April 18, 2014, Abaxis filed the 8-K Notice with the SEC and published the Press Release Notice, which is also available on Abaxis's website at http://phx.corporate-ir.net/phoenix.zhtml?c=115152&p=irol-newsArticle&ID=1919997 (last visited on May 13, 2014).

43. As of the date of this Declaration, Plaintiff's Counsel have not received from any Abaxis stockholder any objection to the Settlement nor any notification that a stockholder intends to appear at the Settlement Hearing.

*Additional Documents Submitted in Support of Plaintiff's Motions for Final Approval of Settlement and for an Award of Attorneys' Fees and Reimbursement of Expenses*

44. Attached hereto as Exhibit D is a true and correct copy of the 8-K Notice.

45. Attached hereto as Exhibit E is a true and correct copy of the Press Release Notice.

46. Attached hereto as Exhibit F is a true and correct copy of a January 13, 2014 article entitled NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore, *available at* http://www.nationallawjournal.com/id=1202637587261/NLJ-Billing-Survey:-1,000-Per-Hour-Isn't-Rare-Anymore?slreturn=20140406182731 (last visited on May 13, 2014).

47. Attached hereto as Exhibit G is a true and correct copy of relevant portions of a report entitled The 2013 Real Rate Report® Snapshot – An Analysis of Law Firm Rates, Staffing, and Trends**.**

48. Attached hereto as Exhibit H is a true and correct copy of an article entitled Global 20: Gibson Dunn, *available at* http://www.gibsondunn.com/publications/Documents/GDC-Global20-8-13-13.pdf (last visited on May 9, 2014).

49. Attached hereto as Exhibit I is a true and correct copy of relevant portions of *In re Sanmina-SCI Corp. Deriv. Litig.*, Case No. C-06-3783-JF, Order Granting Final Approval of Derivative Litigation Settlement (N.D. Cal. May 5, 2009).

50. Attached hereto as Exhibit J is a true and correct copy of relevant portions of *In re Affymetrix Deriv. Litig.*, No. C-06-05353-JW, Order and Final Judgment (N.D. Cal. June 30, 2009).

51. Attached hereto as Exhibit K is a true and correct copy of *Bacas v. Way*, No. 07-cv-0456-MH, Stipulation of Settlement (S.D. Tex. Jan. 9, 2008).

52. Attached hereto as Exhibit L is a true and correct copy of *Bacas v. Way*, No. 07-cv-0456-MH, Order and Final Judgment (S.D. Tex. Apr. 1, 2008).

53. Attached hereto as Exhibit M is a true and correct copy of *In re Bristol-Myers Squibb Deriv. Litig.*, No. 02-cv-8571, Order Awarding Attorneys' Fees and Expenses (S.D.N.Y. July 22, 2005).

54. Attached hereto as Exhibit N is a true and correct copy of *City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10, 2008).

55. Attached hereto as Exhibit O is a true and correct copy of *In re General Motors Corp. Deriv. Litig.*, MDL No. 06-1749, Order Approving Settlement (E.D. Mich. Dec. 22, 2008).


56. Attached hereto as Exhibit P is a true and correct copy of *Karstedt v. Isenberg*, No. 07-cv-00509, Stipulation of Settlement at 7-8, Ex. C (S.D. Tex. Mar. 6, 2008).

57. Attached hereto as Exhibit Q is a true and correct copy of *Karstedt v. Isenberg*, No. 07-cv-00509, Final Judgment and Order (S.D. Tex. May 14, 2008).

58. Attached hereto as Exhibit R is a true and correct copy of *In re Rambus Inc. Deriv. Litig.*, No. 06-3513-JF-HRL, Stipulation of Settlement (N.D. Cal. Oct 29, 2008).

59. Attached hereto as Exhibit S is a true and correct copy of *In re Staples, Inc. S'holders Litig.*, No. 18784, Order and Final Judgment (Del. Ch. Aug. 16, 2001).

60. Attached hereto as Exhibit T is a true and correct copy of *In re F5 Networks, Inc. Deriv. Litig.*, Master File No. C-06-0794-RSL, Order and Final Judgment (W.D. Wash. Jan. 6, 2011).

61. Attached hereto as Exhibit U is a true and correct copy of *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Deriv. Litig.*, No. 08-01916, Order Awarding Plaintiffs' Counsel's Attorneys' Fees and Expenses (S.D. Fla. Oct. 15, 2010).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of May, 2014.

_____
ERIC L. ZAGAR

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13th day of May, 2014.

_____
JOSEPH E. WHITE, III

DECLARATION OF ERIC L. ZAGAR AND JOSEPH E. WHITE, III, IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
CASE NO. 12-CV-05086-YGR

- 13 -