UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ST. LOUIS POLICE RETIREMENT SYSTEM,** *on behalf of itself and All Others Similarly Situated and Derivatively on behalf of Nominal Defendant* ABAXIS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> **CLINTON H. SEVERSON,** *et al.*, <br><br> Defendants, <br><br> **ABAXIS, INC.**, <br><br> Nominal Defendant. | Case No.: 12-CV-5086 YGR <br><br> **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES** |

Plaintiff St. Louis Police Retirement System (on behalf of itself and all others similarly situated and derivatively on behalf of nominal defendant Abaxis, Inc.) moves the Court for award attorneys' fees and reimbursement of expenses. (Dkt. No. 106.) Plaintiff has reached a settlement of this shareholder derivative action against individual defendants Clinton H. Severson, Alberto R. Santa Ines, Kenneth P. Aron, Vladimir E. Ostoich, Donald P. Wood, Martin V. Mulroy, Richard J. Bastiani, Michael D. Casey, Henk J. Evenhuis, Prithipal Singh, Vernon E. Altman, and Ernest S. Tucker, and nominal defendant Abaxis, Inc. ("the Company") and the terms of that settlement direct that the Court determine the amount of reasonable attorneys.

Having carefully considered the papers submitted and the pleadings in this action, including the supplemental briefing submitted at the direction of the Court, as well as the record of the action herein, the Court **ORDERS** that Plaintiff's Motion for Attorneys' Fees is **GRANTED IN PART** and that Plaintiff is entitled to attorneys' fees and expenses in the amount of **$579,429.53**. The reasons follow.

**I.    STANDARDS APPLICABLE TO THIS MOTION**

The district court has broad discretion to determine a reasonable award of attorney fees, and must provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *see also Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985) (court should provide an explanation of the reasonable hours and hourly rate it uses to arrive at fee award). However, a court is under no obligation to "make findings as to each of defendants' specific objections." *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992).

In this case, since the settlement did not create a common fund, the Court utilizes the lodestar method to determine reasonable attorneys' fees. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir.2002); *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262.

In calculating a reasonable number of hours, the applicant must justify his or her claim by submitting detailed time records. *See Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The court must review the time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The court may adjust these hours down if it believes the documentation to be inadequate, if the hours were duplicative, or if they were either excessive or unnecessary. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986). The Court also must assess whether the hours claimed are vague, block-billed, excessive, and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012).

The court's determination of reasonableness also considers the hourly rates claimed. Generally, fees must be calculated according to the prevailing market rates in the forum district. *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992). "The fee applicant has the burden of

producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (alteration in original) (quoting *Jordan*, 815 F.2d at 1263).  A court may rely on its own experience to determine whether the hourly rates and the expended number of hours are reasonable.  *Van Gerwen*, 214 F.3d at 1045.  Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness.  *See Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 782–83 (2002).

**II.    DISCUSSION**

Plaintiff seeks an award of attorneys' fees and reimbursement of expenses in the amount of $1,650,000, which represents a 2.80 multiplier on the lodestar calculation it submitted, based upon 1,231.25 hours (reduced from 1,412 hours).  Plaintiff contends that its efforts yielded substantial benefits to the shareholders, in the form of: (1) injunctive relief requiring Defendants to disclose additional information to shareholders in advance of Abaxis's 2012 annual meeting and proxy vote; and (2) valuable corporate governance reforms that will improve the manner in which Abaxis grants equity awards to its employees and directors, and prevent the kind of conduct that occurred here—awarding Restricted Stock Units ("RSUs") in excess of certain limits under Abaxis's former equity plan—from reoccurring in the future.

Defendants contend that the results achieved here were, in fact, of little benefit to shareholders.  Defendants maintain that the preliminary injunction only required the Company to file a disclosure of information already available to the shareholders, and the governance reforms, while helpful, do not provide any monetary benefit to the Company that would warrant the fee award sought here.  Defendants further argue that Plaintiff never conducted any discovery and spent the vast proportion of the hours claimed here attempting to survive a motion to dismiss and litigating over fees.  In addition, Defendants take issue with the number of hours on the grounds that the action was inefficiently litigating by Plaintiff, using multiple attorneys for tasks that required only one, and thereby generating duplicative hours.  In their supplemental briefing,

Defendants set forth line-by-line objections to items in Plaintiff's detailed billing records. The Court addresses the main categories of objections below.

**A.    Lodestar**

**1.    Hours**

Counsel in class actions are expected to exercise "billing judgment," and district courts "should exclude from [plaintiff's] initial fee calculation hours that were not 'reasonably expended,'" including "excessive, redundant, or otherwise unnecessary" work. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted). Here, Plaintiff has offered detailed billing records broken down into four litigation phases. Defendants, reviewing those same records, divide the litigation into nine phases. For ease of reference, the Court utilizes Defendants' phases for purposes of determining the reasonable number of hours. The following is a summary of the nine phases or stages of the litigation with a subtotal of hours sought by Plaintiff and the hours Defendants argue are reasonable for that phase:

| Stage | Phase/Tasks | Plaintiff's Hours | Defendants' proposed hours |
|---|---|---|---|
| 1 | Investigation/Filing of Complaint/Preliminary Injunction | 127.6 | 92.85 |
| 2 | Reply on Preliminary Injunction Motion and Hearing | 219.15 | 121.65 |
| 3 | Interim between Preliminary Injunction Hearing and Motions to Dismiss | 34 | 26.5 |
| 4 | Opposition to Two Motions to Dismiss | 223.25 | 125.35 |
| 5 | Rule 26 Conference and Supplemental Briefing on Motions to Dismiss | 136.8 | 74.1 |
| 6 | Motions to Dismiss Hearing | 55.35 | 17.75 |
| 7 | Mediation Statement and Attend Mediation | 205.3 | 105.75 |
| 8 | Motion for Preliminary Approval | 102.75 | 51.5 |
| 9 | Motion for Attorney Fees | 108.75 | 71.5 |
| **Total** | | 1,213.25 | 686.95 |

(*See* Supp. Dec. Davis [Dkt. No. 121-3], Exh C.1-C.9.)

4

**Stage 1: Investigation/Filing of Complaint/Preliminary Injunction**

Defendants' main objections here are that hours are excessive or duplicative. The Court agrees that the hours billed for attorney Hooker and attorney Winchester are excessive, given the other attorneys billing for the same or similar tasks during that time period. Also, given the number of partners involved in the litigation, the minimal additional hours of another partner (Winchester) appear to be unnecessary. The Court cuts 8 hours for Hooker and 0.5 hours for Winchester.

In their line-by-line objections, Defendants object to all paralegal time, in this phase of the litigation and others, on the grounds that "Plaintiff has failed to meet its burden to provide authority that the time is compensable or that the paralegals were performing compensable tasks." (*See, e.g.,* Supp. Dec. Davis, Exh C.1 at 3-4.) However, Defendants did not address this issue in their briefing or arguments. The Court finds Defendants' objection to be insubstantial. Plaintiffs have submitted the time records showing the tasks the paralegals were performing. Further, the Court's review of the time records does not indicate that the tasks performed were not compensable, or that the hours were excessive or duplicative. Therefore, the Court overrules the objections to paralegal time in this stage and the other stages of the litigation.

**Stage 2: Reply on Preliminary Injunction Motion and Hearing**

Defendants object to the duplicative time entries here. The Court agrees that the hours should be reduced on these grounds and cuts 4.5 hours for Saxena and 2.25 hours for Winchester. The Court also eliminates 13.75 hours for Anderson as duplicative, particularly given that her entries are incomplete and unintelligible as a result.

Defendants also object to vague entries that only reference "email counsel" or "phone counsel" without any further descriptor. The Court agrees that these entries should be disallowed and therefore cuts one hour of Stein's time and one hour of Zagar's time.

Defendants' objections to time spent on unsuccessful settlement discussions are overruled. The Court will not penalize Plaintiff for utilizing attorney time in an attempt to reach a settlement early on, even if not initially successful, particularly in light of Plaintiff's eventual success.

**Stage 3: Interim between Preliminary Injunction Hearing and Motions to Dismiss**

Defendants raised a vagueness objection to Hooker's hours and the Court reduces them by .25 hours on those grounds.

**Stage 4:  Opposition to Two Motions to Dismiss**

Defendants again raise objections regarding duplicative or excessive hours.  The Court finds that several attorneys' entries should be reduced as duplicative, particularly in light of the nature of the motions.  The Court reduces the hours in this category as follows: Stein's hours are reduced by 4.25; Winchester's hours are reduced by .25; Canot's hours are reduced by 20.0; and Weidner's hours are reduced by 20.0.

Defendant again raised vagueness objections and the Court reduces Zagar's hours by 0.5 on these grounds.

**Stage 5: Rule 26 Conference and Supplemental Briefing on Motion to Dismiss**

Defendants' objections regarding the time spent reviewing SEC filings and considering a partial summary judgment motion are overruled.  Plaintiff must be given some leeway to litigate the case as it sees fit.  Exploring and then abandoning one motion is not sufficient reason to cut the hours spent on that task.

Defendants object to duplicative hours wherein multiple attorneys billed with respect to completion of an ADR form, a certificate of interested parties, preparation for the Rule 26(f) conference, and preparation for the hearing on the motion to dismiss.  The Court finds many of these objections well-founded.  The Court therefore reduces the hours claimed as follows:  White reduced by .25; Saxena reduced by 3.0; Stein reduced by 1.0; Hooker reduced by 10.75; and Goldstein by 4.6.

Additional entries were either vague or incomprehensible.  The Court cuts Anderson's hours by 1.0, Stein's by 0.5, and Zagar's by 1.25 on these grounds.

**Stage 6: Motion to Dismiss Hearing**

Defendants again object to excessive or duplicative hours in this category, particularly in light of the fact that the Saxena firm did not appear at the hearing or have a need to prepare for it.

The Court agrees that the many entries here are unnecessary and not properly included. The Court therefore cuts 4.25 hours for Maya Saxena and 28.25 hours for Lester R. Hooker.

**Stage 7: Mediation Statement and Attend Mediation**

Defendants' objections to the excessive and duplicative hours billed are particularly pointed in this phase of the litigation. Plaintiff's counsel brought five attorneys to the mediation and Plaintiff's counsel indicated during the hearing on the fee motion that some of the billers attended as an "education experience." (Davis Decl., Exh. B. at 4; Exh. A at 15:19-16:3). The Court agrees that the hours here are far in excess of what is reasonable for this phase of the litigation, both in terms of hours billed for attendance at the mediation, and hours billed for preparation in advance of the mediation (both by attorneys attending and those who did not attend). Reasonable attorneys' fees do not include training time for less experienced lawyers. The Court cuts the hours as follows: White's hours are reduced by 19.75, Stein's hours are reduced by 21.0, Miller's hours are reduced by 12.0, Goldstein's hours are reduced by 9.5, Anderson's hours are reduced by 1.0, and Weidner's hours are reduced by 8.0.

In addition, Saxena's hours are reduced by 1.25 for what appears to be an erroneous entry. Also, Stein's hours are reduced by 1.5 and Zagar's hours are reduced by 3.0 for vague entries.

**Stage 8: Motion for Preliminary Approval**

The Court reduces the hours in this phase of the litigation for duplicative, unnecessary or excessive billing as follows: White's hours are reduced by 2.0, Stein's hours are reduced by 2.0, Hooker's hours are reduced by 3.5, Goldstein's hours are reduced by .75; Anderson's hours are reduced by 3.0.

**Stage 9: Motion for Attorney Fees**

The Court reduces the hours in this phase of the litigation for duplicative billing as follows: Hooker's hours are reduced by 10.0, Weidner's by .25, and Uris's by 7.0. Further, Stein's time is reduced by .25 hours as vague.

**Summary:**

In sum, after conducting a careful and copious review of the detailed billing records and Defendants' objections, the Court finds the following hours reasonable:

| Attorney | Title | Requested Hours | Awarded Hours |
|---|---|---|---|
| Lee Rudy | Partner | 21 | 21 |
| Eric Zagar | Partner | 120 | 114.25 |
| Robin Winchester | Partner | 3 | 0 |
| Joseph White | Shareholder | 64 | 42 |
| Maya Saxena | Shareholder | 40.75 | 27.75 |
| Jonathan Stein | Sr. Counsel | 95.25 | 63.75 |
| James Miller | Associate | 171.25 | 159.25 |
| Lester R. Hooker | Associate | 182.5 | 121.75 |
| David Uris | Staff Attorney | 7 | 0 |
| Matthew Goldstein | Associate | 270.5 | 255.65 |
| Katherine W Weidner | Associate | 55.25 | 27 |
| Jessenia Canot | Associate | 58.25 | 38.25 |
| Dianne M. Anderson | Associate | 27.5 | 8.75 |
|  | Paralegals | 107.5 | 107.5 |

**2. Rate**

Plaintiff argues that the rates sought by its counsel are reasonable and have been accepted by numerous other courts. Plaintiffs offer a 2012 survey of fees, including rates charged by other corporate, securities, and litigation practitioners in the San Francisco Bay area. (Zagar and White Declaration, Dkt. No. 107, at Exh. G.) Plaintiff argues that the rates sought are particularly reasonable given that Defendants' counsel, Gibson Dunn, charges much higher rates.

Defendants take issue with the rates claimed, contending that Plaintiff cherry-picked the rates in the survey for purposes of comparison, and did not look to the comparable rates for the litigation specialty area and for smaller firms. Defendants further argue that Plaintiff has not provided complete information for each of the attorneys' years of practice, making comparisons even less meaningful. No rate comparison information was offered for paralegals.

Since the litigation was pending in the San Francisco Bay Area, the Court looks to rates in this market as the reasonable rate in this matter. *Gates,* 987 F.2d at 1405. The Court also finds information in the CEB survey regarding rates within a specialty area and firm size to be relevant to a determination of the appropriate rate. Kessler Topaz is a securities class action litigation firm with fewer than 100 total attorneys, and Saxena White is a firm specializing in securities class action litigation with 10 total attorneys. (Zagar and White Declaration at Exh. B and C.) As a

general matter, rates in the CEB's "High-Level Data" Table for the San Francisco area, list a middle range (25th to 75th percentile) of $500 to $800 for partners, and $319.50 to $525.00 for associates. (Zagar and White Declaration, Exh. G at p. 15.) Looking to the more analogous rates listed by city and practice area, "Litigation (Excluding Insurance Litigation)" category, the middle range (25th-75th percentile) of partner rates for a San Francisco-area firm of Kessler Topaz's size would be $350-585, and associate rates would be $185 to $335. For a firm of Saxena White's size, the middle ranges would be $275 to $640 for partners, and $175 to $350 for associates. (*Id.* at 78.) The rates for the Finance and Securities category are significantly higher, but there are no rates listed in this category for firms smaller than 501 attorneys.[1] (*Id.*)

Based upon the survey data provided, and the Court's knowledge of market rates, the Court sets the rates to be awarded as follows:

| RATES | | | |
|---|---|---|---|
| **Name** | **Title** | **Claimed Rate** | **Awarded Rate** |
| Lee Rudy | Partner | 700 | 650 |
| Eric Zagar | Partner | 675 | 650 |
| Robin Winchester | Partner | 650 | 650 |
| Joseph White | Shareholder | 725 | 650 |
| Maya Saxena | Shareholder | 725 | 650 |
| Jonathan Stein | Sr. Counsel | 695 | 500 |
| James Miller | Associate | 424 | 350 |
| Lester R. Hooker | Associate | 455 | 350 |
| David Uris | Staff Attorney | 395 | 350 |
| Matthew Goldstein | Associate | 360 | 250 |
| Katherine W Weidner | Associate | 350 | 250 |
| Jessenia Canot | Associate | 350 | 250 |
| Dianne M. Anderson | Associate | 350 | 250 |
| (Multiple) | Paralegals | 200 | 150 |

//
//
//

---

[1] By way of comparison, the rates for partners listed range from $745-923.12, and for associates from $396-$605. (Zagar and White Declaration, Exh. G at 77.) Further, the methodology section of the survey does not support the notion that shareholder derivative litigation is among the types of legal work included in the "Finance and Securities" category. (*Id.* at 104-05.)

9

Following from the above determinations, the lodestar is calculated as follows:

| LODESTAR TOTAL | | | |
|---|---|---|---|
| **Name** | **Awarded Hours** | **Awarded Rate** | **Fees** |
| Lee Rudy | 21 | 650 | $13,650.00 |
| Eric Zagar | 114.25 | 650 | $74,262.50 |
| Robin Winchester | 0 | 650 | $0 |
| Joseph White | 42 | 650 | $27,300.00 |
| Maya Saxena | 27.75 | 650 | $18,037.50 |
| Jonathan Stein | 63.75 | 500 | $31,875.00 |
| James Miller | 159.25 | 350 | $55,737.50 |
| Lester R. Hooker | 121.75 | 350 | $42,612.50 |
| David Uris | 0 | 350 | $0 |
| Matthew Goldstein | 255.65 | 250 | $63,912.50 |
| Katherine W Weidner | 27 | 250 | $6,750.00 |
| Jessenia Canot | 38.25 | 250 | $9,562.50 |
| Dianne M. Anderson | 8.75 | 250 | $2,187.50 |
| (Multiple) | 107.5 | 150 | $16,125.00 |
| **Total Lodestar:** | | | **$362,012.50** |

### B.     Multiplier

Courts applying California law often award multipliers of the lodestar to take into account such factors as the "contingent nature of the employment, the quality of the work, difficulty of pretrial and trial preparation, importance of the suit, and the public nature of plaintiffs' position." *Coal. for L. Cnty. Planning etc. Interest v. Bd. of Supervisors*, 76 Cal. App. 3d 241, 251 (1977) (*citing Serrano v Priest*, 20 Cal.3d 25, 48-49 (1977)); *see also Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied* 425 U.S. 951 (1976) (determining reasonable fees by taking into account factors of "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.")  At the same time, the United States Supreme Court has reiterated that the lodestar figure is a presumptively reasonable amount of attorneys' fees.  *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010).  While such a presumption

is strong, it "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee" *Id.* at 554. A court may also consider an upward adjustment of the lodestar, or a multiplier, to account for special circumstances such as an extraordinary outlay of expenses, particularly protracted litigation, or a significant delay in payment of fees. *Perdue*, 559 U.S. at 556. "[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 559 U.S. at 552-553. The contingency risk in the litigation is a factor "presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 364, n. 9 (9th Cir. 1996), citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied* 425 U.S. 951 (1976).

Plaintiff argues that a multiplier of 2.83 in this litigation is reasonable. In support of this multiplier, Plaintiff argues that the litigation resulted in substantial benefits in terms of both the supplemental disclosures that were ordered by the Court and the corporate governance reforms agreed upon in settlement. Plaintiff also contends that the contingency risk here, the quality of representation and efforts by counsel, and the fees awarded in similar litigation support the requested multiplier.

Defendants argue that the multiplier is unsupported for a variety of reasons. Defendant disputes the relevance of the cases on which Plaintiff relies, since they either involved uncontested fee agreements where the Court simply approved the agreed amount or the multiplier was a cross-check on a common fund award, or were the result of corporate wrongdoing, such as backdating of stock options or fraudulent accounting, not alleged here. Defendants also contend that Plaintiff's efforts here were minimal, as evidenced by the fact that no discovery was ever conducted. Defendants further argue that the results achieved are dubious, since the information in the supplemental disclosure was already available, the governance reforms were not significant changes, and the merits of Plaintiff's claims were in serious doubt based upon the motion to dismiss pending at the time of the settlement.

The Court finds that the results achieved by Plaintiff upheld important principles of corporate governance. While Defendants continue minimize the significance of the violation, the Court found that Defendants' failure to make full disclosures of material facts bearing on the shareholders' proxy vote was an apparent violation of their obligations under Section 14(a) of the Securities Exchange Act. Plaintiff's counsel was required to act swiftly and devote significant resources to correcting the insufficient disclosure prior to the proxy vote. Likewise, the Court does not discount the importance of the changes in corporate governing documents and policies that resulted from the settlement negotiations. Despite holding a hearing on the motions and requiring supplemental briefing of the parties, the Court never ruled on the merits of Defendants' arguments that the remaining claims were insufficiently pleaded, since the parties requested the Court to defer ruling on the two pending motions to dismiss due to the ongoing settlement discussions. The matter ultimately settled without a ruling on the motions to dismiss. (*See* Order Terminating Pending Motions to Dismiss Without Prejudice, Dkt. No. 91.) On the other hand, the Court does not find that the case involved extraordinary risk, complexity, or effort on the part of Plaintiff's counsel, given that the most significant achievements in the case were completed at the preliminary injunction stage, with a protracted period of time before settlement that did not add much more to those achievements.

Consequently, the Court awards a multiplier of 1.5 times the lodestar, for a total attorneys' fee award of **$543,018.75**.

**C.     Costs**

Plaintiff seeks costs and expenses in the total amount of $51,231.89, which breaks down as follows:

| | |
|---|---|
| Filing Fees | $5,980.95 |
| Process Server, Messenger, Courier, Mail, Delivery & Postage | $1,871.63 |
| Online research | $10,257.78 |
| Travel (Hotel, Meals, Transportation, Parking & Tolls) | $22,248.25 |
| Telephone, Photocopy, Printing, Fax | $3,573.28 |
| Mediation | $7,300.00 |

Defendants object to the costs claimed by Plaintiff as duplicative, wasteful and (in some cases) unexplained, particularly with respect to travel costs for multiple attorneys to attend hearings

and to attend the mediation. Defendants also object to general overhead costs such as for telephone and photocopying, particularly since there are additional per page charges. Defendant proposes that the unexplained travel costs, as well as the travel costs for more than one attorney to attend any case related event—in total $14,639.28— be subtracted from the costs award. (See Davis Decl., Exh. B.) Defendant also requests that the Court strike Saxena White's $2,375.00 in claimed overhead expenses as insufficiently related (if at all) to the work the firm performed on the shareholders behalf. (*See* Davis Decl., Exh. G.)

The Court agrees that many of the claimed expenses here are excessive or inadequately supported. The travel expenses for multiple attorneys to attend the mediation will not be allowed. However, the expenses for two attorneys to attend the hearings here were reasonable. The Court therefore reduces the travel category by $2,724.74 for multiple attorneys' travel expenses and by $5,798.35 for unexplained travel expenses (apparently due to multiple attorneys' attendance), to a total of $11,000.42 for travel expenses. The Court also eliminates the overhead expenses category since it appears to be a flat overhead charge rather than a particular expense of the litigation. In sum, the Court awards expenses as follows:

| **Expenses Awarded** | |
|---|---:|
| Filing Fees | $5,980.95 |
| Process Server, Messenger, Courier, Mail, Delivery & Postage | $1,871.63 |
| Online research | $10,257.78 |
| Travel (Hotel, Meals, Transportation, Parking & Tolls) | $11,000.42 |
| Overhead Expenses (Telephone, Photocopy, Printing, Fax) | $0 |
| Mediation | $7,300 |
| **Total** | **$36,410.78** |

### III. CONCLUSION

Based upon the foregoing, the Court awards Plaintiff reasonable attorneys' fees and costs in a total amount of **$579,429.53**.

**IT IS SO ORDERED.**

This order terminates Docket No. 106.

**Date: August 11, 2014**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**